IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| **CDK GLOBAL, LLC,** | ) | Case No.: 23-cv-00357 |
| Plaintiff, | ) | Hon. Susan J. Dlott |
| Vs. | ) | |
| **TEKION CORP, et al.,** | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION FOR DISMISSAL OF
### COUNTS I, II, III, IV, V, IX, and X OF PLAINTIFF'S COMPLAINT

Defendants, Tekion Corp, Andrew Backs, Demi Auel, Tyler Sparks, Richard Dansby, and Christopher Abbott, through counsel, hereby move this Court pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts I, II, III, IV, V, IX, and X of Plaintiff's Complaint. In support, Defendants rely upon the supporting memorandum filed herewith.

WHEREFORE, Defendants respectfully request that this Court GRANT their Motion and enter an order dismissing Counts I, II, III, IV, V, IX, and X of Plaintiff's Complaint, and awarding Defendants any other relief this Court deems equitable and just, including its fees and costs.

Respectfully submitted,

BRICKER GRAYDON LLP

*/s/ Michael A. Roberts*
Michael A. Roberts (Oh Bar #: 0047129)
*Trial Attorney*
Alexandra M. Berry (Oh Bar #: 0098176)
BRICKER GRAYDON LLP
312 Walnut St., Suite 1800
Cincinnati, OH 45202
513.629.2799
Fax: 513.333.4330
mroberts@brickergraydon.com
*For Defendants*

1

20059998v1

Patrick F. Hickey
Hickey, Hauck, Bishoff, Jeffers & Seabolt
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.9079 phickey@hhbjs.com
*Application for Admission Pro Hac pending*

Ben Shipper
Hickey, Hauck, Bishoff, Jeffers & Seabolt
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.888.9607
bshipper@hhbjs.com
*Application for Admission Pro Hac pending*

## **MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

This is an action by Plaintiff, CDK Global, LLC ("CDK"), against five of its former employees (Backs, Auel, Sparks, Dansby, and Abbott, herein the "Individual Defendants") and their new employer, Tekion Corp ("Tekion"), alleging: (a) three counts of misappropriation of trade secrets (Counts I-III); (b) Tekion tortious interference with contracts (Count IV); (c) unjust enrichment (Count V); and (d) breach of post-employment restrictive covenants (Counts XI-X)

CDK fails to plead its trade secret claims (Counts I-III) with the requisite specificity. CDK's "threadbare" and "formulaic recitation[s]" of the elements of its misappropriation of trade secret causes of action violate the pleading requirements set forth in *Iqbal* and *Twombly*. CDK fails to set forth the alleged trade secrets that Defendants had access to and/or misappropriated. CDK also fails to allege how Defendants misappropriated any alleged trade secret. Additionally, the claim based on Illinois' Trade Secret Act (Count II) can only apply to acts performed in Illinois, but the conduct alleged occurred outside of Illinois.

Further, CDK has failed to adequately allege the existence of any enforceable restrictive agreement between it and Dansby or Abbott (Counts IX and X). Finally, CDK's tortious

2

20059998v1

interference and unjust enrichment claims (Counts IV and V) are preempted, in whole or in part, by CDK's trade secret claims.

## II. RELEVANT FACTUAL BACKGROUND

### A. Background Regarding CDK

CDK is a company that "provides integrated information technology and digital marketing to the automotive, heavy truck, recreation, and heavy equipment industries" that "help[s] . . . integrates [its] clients buying processed and include[s] targeted advertising and marketing, as well as products for the sale, financing, insuring, parts supply, repair, and maintenance of vehicles." [ECF No. 1 ¶ 17.] CDK is an "automotive technology compan[y] that offer[s] 'dealer management system' ('DMS') software—complex enterprise computer systems employed by car dealerships to collect, manage, and deploy data they generate." *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-864, 2023 WL 4305901, at *2 (N.D. Ill. June 29, 2023).[1]

### B. The Individual Defendants and Their Former Employment at CDK

The Individual Defendants are former employees of CDK. According to the Complaint: (i) Backs and Dansby were Senior Technical Support Analysts; (ii) Auel was a Technical Support Analyst and Information Technology Analyst; (iii) Sparks was an Application Support Engineer and Customer Care Supervisor; and (iv) Abbott was Manager, Fixed Ops. [ECF No. 1 ¶¶ 3-7, 24, 38, 52, 65, 80.] CDK does not describe the Individual Defendants' job duties. And these vague job

---

[1] For (at least) the past six years, CDK (and its implementation and operation of its DMS software) has been the subject of numerous lawsuits, including multi-district litigation, throughout district courts in the Seventh Circuit based on, *inter alia*, CDK's alleged "anticompetitive conduct" and/or antitrust violations. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 2023 WL 4305901, at *2 n.2 ("The court has detailed the basic facts of this MDL in multiple opinions and assumes knowledge of those opinions here. *See, e.g., In re Dealer Mgmt. Sys. Antitrust Litig. ("Authenticom MTD Op.")*, 313 F. Supp. 3d 931 (N.D. Ill. 2018); *In re Dealer Mgmt. Sys. Antitrust Litig. ("AutoLoop MTD Op.")*, 362 F. Supp. 3d 477 (N.D. Ill. 2019); *In re Dealer Mgmt. Sys. Antitrust Litig. ("Dealers MTD Op.")*, 362 F. Supp. 3d 510 (N.D. Ill. 2019); *In re Dealer Mgmt. Sys. Antitrust Litig. ("Daubert Op.")*, 581 F. Supp. 3d 1029 (N.D. Ill. 2022).").

titles do not reveal what type of work the Individual Defendants actually performed. Backs, Auel, Sparks, and Abbott worked in CDK's office located at 4600 Montgomery Road, Cincinnati, OH 45212. *Id.* ¶¶ 1, 3-5, 7, 23, 37, 51, 79. Dansby resided in Texas and worked for the Montgomery, Ohio office remotely. *Id.* ¶¶ 6, 64.

The Complaint alleges that each of the Individual Defendants executed restrictive agreements as part of their employment with CDK. The agreements allegly signed by Backs, Auel, and Sparks are attached to the Complaint. [ECF Nos. 1-2, 1-3, 1-4, 4]. CDK did not attach an agreement signed by Dansby or Abbott. [*See* ECF Nos. 1-5, 1-6.]

Copies of the restrictive agreements alleged to have been signed by Backs, Auel, and Sparks are attached to CDK Complaint. [ECF Nos. 1-2, 1-3, 1-4, 4]. CDK did not attach agreements allegedly signed by Dansby or Abbot. CDK merely attached one-page electronic "acknowledge[ments]," which contain no terms. [*See* ECF Nos. 1-5, 1-6.] Notably, the Backs, Auel, and Sparks' alleged agreements and Abbott's otherwise blank acknowledgement are dated prior to the start of their respective employment at CDK:

| **Defendant** | **Alleged Date of Signing Restrictive Agreement** | **Date Employment at CDK Began** |
|---|---|---|
| Andrew Backs | August 27, 2019 [ECF No. 1-2, PageID.58] | September 2019 [ECF No. 1 ¶ 23] |
| Demi Auel | February 3, 2020 [ECF No. 1-3, PageID.82] | March 2020 [ECF No. 1 ¶ 37] |
| Tyler Sparks | May 19, 2016 [ECF No. 1-4, PageID.90] | July 2016 [ECF No. 1 ¶ 51] |
| Christopher Abbott | November 12, 2015 [ECF No. 1-6, PageID.92] | January 2016 [ECF No. 1 ¶ 79] |

C. **The Individual Defendants Resign from CDK**

Over a seven-month period of November 2022 to May 2023, each of the Individual Defendants resigned from CDK. [*See* ECF No. 1 ¶¶ 35, 49, 62, 77, 90.] Subsequently, they each

4

became Tekion employees. Tekion offers an automotive retail transaction software application (including its Automotive Enterprise Cloud program) that links automotive manufacturers, retailers, and consumers from the point of the consumer's purchase of an automobile through delivery.

CDK defines its alleged trade secrets as its "pricing, costs, designs, services, sales plans, business model, strategic growth plans, training methods, employee ratings, individual market data, and vendor and customer information." *Id.* ¶¶ 93, 108, and 123. CDK alleges that each of the Individual Defendants "had access to and knowledge of CDK's trade secrets" and recites the general statutory language regarding misappropriation. *Id.* ¶¶ 98, 100, 102, 113, 115, 117, 128, 130, 132. However, the Complaint fails to allege any specifics about acquisition, disclosure, or use of the alleged trade secrets.

### III. LAW AND ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[The] tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

5

to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. *See also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). A court may consider exhibits attached to plaintiff's complaint as part of a Rule 12(b)(6) Motion. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citing *Nieman v. NLO, Inc.*, 108 F.3d 1546 (6th Cir. 1997)).

### B. Plaintiff's Claims for Trade Secret Misappropriation (Counts I, II, and III) Should Be Dismissed

#### 1. The ITSA Does Not Apply to the Conduct Alleged

Count II of CDK's Complaint alleges that Defendants Tekion, Backs, Auel, Dansby, and Abbott violated the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.* ("ITSA"). Illinois courts employ "the long-standing rule of construction . . . which holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Armada (Singapore) Pte Ltd. v. Amcol Int'l Corp.*, 244 F. Supp. 3d 750, 757 (N.D. Ill. 2017), *aff'd*, 885 F.3d 1090 (7th Cir. 2018). Illinois courts have held that the ITSA "does not have extraterritorial reach." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F. Supp. 3d 1150, 1170 (N.D. Ill. 2020). Thus, in order for CDK to sustain its misappropriation claim under the ITSA, "Illinois courts consider whether the circumstances relevant to the claim are alleged to have occurred 'primarily and substantially' in Illinois." *Inventus Power, Inc. v. Shenzhen Ace Battery Co.*, No. 20-3375, 2020 WL 3960451, at *8 (N.D. Ill. July 13, 2020) (quoting *Armada*, 244 F. Supp. 3d at 757) (plaintiff failed to demonstrate conduct underlying misappropriation claim "occurred 'primarily and substantially' in Illinois" and thus was "actionable under the ITSA"

6

where "employees accused of stealing [p]laintiffs' trade secrets are Chinese nationals working in China who were employed by one Chinese corporation . . . before moving to employment at another Chinese corporation").

In the instant case, CDK alleges that each of the Individual Defendants: (a) reside and are otherwise citizens of Ohio (Backs, Auel, Sparks, and Abbott) or Texas (Dansby); (b) worked at CDK in Ohio and/or at CDK's Ohio offices (either physically or remotely); and (c) presently work at Tekion in Ohio and/or at Tekion's Ohio offices (either physically or remotely). [*See* ECF No. 1 ¶¶ 3-7, 23, 37, 51, 64, 79.] CDK further alleges that Tekion is a Delaware corporation, with a principal place of business in California, but with an office (at which the Individuals Defendants presently work) in Ohio. *Id.* ¶¶ 2. Consequently, because **none** (let alone "primarily and substantially" all) of the actions giving rise to CDK's misappropriation claims occurred in Illinois, the ITSA is inapplicable.

CDK may argue that certain restrictive agreements (namely, for Backs and Auel) contain choice-of-law provisions requiring the application of Illinois law. However, a contractual choice-of-law provision only determines which otherwise *applicable* competing laws govern a dispute between two parties (e.g., whether to interpret the parties' breach of contract claim in accordance with Illinois law). A choice-of-law provision cannot create for a plaintiff an otherwise statutorily impermissible cause of action. Moreover, even if the ITSA applied here, CDK reads the choice-of-law provision too broadly. Specifically, the provision is limited to: "[t]he interpretation, validity, and enforcement **of this Agreement** . . . ." [ECF. No. 1-2, PageID.41; ECF No. 1-3, PageID. 65 (emphasis added).] CDK's extra-contractual misappropriation claims do not fall within the interpretation, validity, and/or enforcement of the employment agreements; rather, claims under the ITSA are a separate tort. *See, e.g.*, *Miami Valley Mobile Health Servs., Inc. v. ExamOne*

*Worldwide, Inc.*, 852 F. Supp. 2d 925, 936 (S.D. Ohio 2012) (choice of law provision limited to the parties' rights and duties under "[t]his Agreement" did not apply to plaintiff's trade secret misappropriation and other tort claims).

Consequently, CDK's ITSA claim (Count II) must be dismissed.

### 2. CDK Has Failed to Plead the Subject Trade Secrets with the Requisite Particularity

CDK's Complaint alleges claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.* ("DTSA") (Count I—against all Defendants), the ITSA (Count II—against Tekion, Backs, Auel, Dansby, and Abbott), and Ohio's Uniform Trade Secrets Act, R.C. § 1333.61, *et seq.* ("OUTSA") (Count III—against Tekion and Sparks). To prevail on a claim for misappropriation of a trade secret under the DTSA, ITSA, or OUTSA, a plaintiff must show that: (1) the information at issue was a trade secret; (2) that it was misappropriated; and (3) it was actually used in the defendant's business.[2] *See In re Adegoke*, 632 B.R. 154, 165, 165 n.8 (Bankr. N.D. Ill. 2021) (citing *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 721 (7th Cir. 2003)) (noting that "[t]he requirements for finding a violation under [the DTSA and ITSA] are identical"); *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 Fed. Appx. 860, 861 (6th Cir. 2008) (regarding the elements to prove a violation of the OUTSA).

The definition of "trade secret" under the DTSA, ITSA, and OUTSA is also similar. *See Equity Res., Inc. v. Thomas*, No. 21-5922, 2023 WL 4564402, at *12 (S.D. Ohio July 17, 2023) (citing *PPS Serv. Grp., LLC v. Eckert*, No. 18-727, 2019 WL 3927232, at *3 (S.D. Ohio Aug. 20, 2019); *Sunjoy Indus. Grp., Ltd. v. Permasteel, Inc.*, No. 22-1896, 2023 WL 406211, at *7 (S.D.

---

[2] As set forth in the preceding Section, CDK's ITSA claim should be dismissed as a matter of law. Notwithstanding this (and to the extent this Court disagrees with Defendants), this Section establishes CDK's lack of specificity defining its trade secrets in light of the DTSA, the ITSA, and the OUTSA because, as set herein, all three statutes are similar and the applicability and analysis of Defendants' argument is practically identical throughout.

8

Ohio Jan. 25, 2023) ("Courts consider these state and federal law claims together because the definition and requirements of the OUTSA and DTSA are essentially the same."). Specifically, Ohio defines trade secrets as follows:

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Equity Res.*, 2023 WL 4564402, at *10 (quoting R.C. § 1333.61(D)). *See also* 765 ILCS 1065/2(d) (similarly defining "trade secret" under the ITSA); 18 U.S.C. § 1839(3) (similarly defining "trade secret" under the DTSA).

"The function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 778-79 (S.D. Ohio 2009) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)). To this end, as part of pleading a claim for trade secret misappropriation, "[a] plaintiff is required to identify a trade secret with specificity to separate the secret from general knowledge." *AtriCure, Inc. v. Jian Meng*, 842 F. App'x 974, 980 (6th Cir. 2021) (citing *Alice's Home v. Childcraft Educ. Corp.*, No. 09-299, 2010 WL 3448319, at *4 (Ohio Ct. App. Sept. 2, 2010) (stating that the proponent of a trade secret must "fully articulat[e] . . . precisely what aspects of [a product], either in design, material, or function, constitute[ ] a protectable trade secret[ ]")); *See also Nilssen v. Motorola, Inc.*, 963 F. Supp. 664, 672 (N.D. Ill. 1997) (internal

9

citations omitted) ("[Plaintiff] cannot state a claim for trade secret protection under the [ITSA] by simply 'producing long lists of general areas of information which contain unidentified trade secrets' Instead he must articulate protectable trade secrets with specificity or suffer dismissal of his claim[.]").

In the instant case, CDK defines its trade secrets as "CDK's pricing, costs, designs, services, sales plans, business model, strategic growth plans, training methods, employee ratings, individual market data, and vendor and customer information." *Id.* ¶¶ 93 (Count I), 108 (Count II), and 123 (Count III). This list of purported trade secrets is not "fully articulat[ed]" and otherwise merely constitutes "general areas of information which contain unidentified trade secrets." Consequently, and without clarification or modification to more particularly identify what portions of these "general areas of information" CDK alleges are trade secrets and Defendants misappropriated, CDK cannot sustain any of its trade secret claims.

### 3. CDK Has Failed to Plead Defendants' Alleged Misappropriation with the Requisite Particularity

As stated, "[t[he function of the complaint is to afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Clark*, 642 F. Supp. 2d at 778-79 (internal citations omitted). While "[a] complaint need not set down in detail all the particularities of a plaintiff's claim[,] . . . the complaint 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.' Bare assertions of legal conclusions are insufficient." *Id.* at 779 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original); citing *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993)). "Likewise, 'a formulaic recitation of the elements of a cause of action' is not enough." *Id.* (quoting *Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678).

10

Although "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a claim, this is exactly what CDK alleges in its Complaint. Specifically, for each of its trade secret misappropriation claims, CDK merely alleges that the Individual Defendants "had access to and knowledge of CDK's trade secrets" and recites the general statutory language regarding misappropriation (e.g., that the Individual Defendants "us[ed] improper means to acquire" the trade secrets; "disclose[ed] the trade secrets to a third party" (Tekion); and "us[ed] the trade secrets). ECF No. 1 ¶¶ 98, 100, 102, 113, 115, 117, 128, 130, 132. However, the Complaint fails to allege any specifics about the Individual Defendants' acquisition, disclosure, or use. The Complaint is devoid of any allegations that the Individual Defendants, for example, emailed themselves, copied to flash drives, etc., documents containing (alleged) trade secret information. There are similarly no allegations that CDK lost any customers (or even that any of its customers have been contacted). In order to sustain its trade secret claims, CDK must allege some facts supporting the mere allegation of the legal elements of the causes of actions pled.

Similarly, to the extent that CDK relies on "alternative[]" allegations that the Individual Defendants' disclosure "is inevitable" as a result of their new positions at Tekion [ECF No. ¶¶ 101, 116, 131], this basis for liability is also insufficient. Indeed, courts applying Illinois and Ohio law have rejected CDK's argument that merely because an employee "assume[s] a similar position at a competitor" that the employee will "inevitabl[y] . . . disclose . . . trade secret information." *Accel Sch. LLC v. Thorson*, No. 19-2144, 2019 WL 13194891, at *2 (N.D. Ohio Sept. 19, 2019) (citing *Pepsico, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir.1995) ("the mere fact that a person assumed a similar position at a competitor does not, without more, make it 'inevitable that he will use or disclose . . . trade secret information' so as to 'demonstrate irreparable injury'")). In the instant case, CDK has provided no allegations, other than its "formulaic recitation of the elements,"

20059998v1

to support its claim for alleged inevitable misappropriation.[3]

### C. CDK's Breach of Contract Claims against Dansby and Abbott Should Be Dismissed

#### 1. CDK Fails to Adequately Allege the Existence of Any Contract between It and Dansby or Abbott

A breach of contract claim under either Ohio or Illinois law[4] requires a plaintiff to plead that (1) a binding contract existed, (2) it performed its contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) it suffered damages as a result of the breach. *Transp. Ins. Co. v. Busy Beaver Bldg. Ctrs., Inc.*, 969 F. Supp. 2d 875, 884 (S.D. Ohio 2013) (citing *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Group, Inc.*, 218 F. Supp. 2d 974, 976 (N.D. Ill. 2002); *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio*, 880 N.E.2d 926, 934 (Ohio Ct. App. 2007)) ("[A] choice of law analysis [between Ohio and Illinois law] is unnecessary because there are no distinctions among the pertinent states' contract laws which would alter the analysis.").

CDK's Complaint alleges that Dansby and Abbott each signed "Non-Disclosure

---

[3] Moreover, considering the Individual Defendants' positions and job duties while employed at CDK, the inevitable disclosure doctrine does not even apply to them. To this end, the doctrine only applies to "employee[s] with detailed and comprehensive knowledge of an employer's trade secrets." *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268, 279 (Ohio App. Ct. 2000) (citing *PepsiCo*, 54 F.3d 1269). The *PepsiCo* Court analogized the employee's required level of such trade secret knowledge as follows: "In other words, PepsiCo finds itself in the position of a coach, one of whose players has left, playbook in hand, to join the opposing team before the big game." In the instant case, the Individual Defendants—technical support hotline employees and their supervisors—do not have any such "playbook" regarding CDK's operations or any alleged trade secret information.

[4] As stated, CDK's Complaint fails to attach Dansby and Abbott's alleged respective restrictive agreements; however, CDK alleges that they are "substantially the same" as those allegedly executed by Backs and Auel (which contain Illinois choice-of-law provisions) and Sparks (which contains an Ohio choice-of-law provision). CDK's "upon information and belief" allegations and certain circumstances regarding the purported execution of the restrictive agreements (as set forth in more detail herein) make it significantly implausible that the purported restrictive agreements involving Dansby and Abbott are "substantially the same" to those of Backs/Auel/Sparks. Notwithstanding this, this Section applies the law of both Ohio and Illinois (which, as set forth herein, is essentially the same).

20059998v1

Agreements," but fails to attach copies of the alleged restrictive agreements. Indeed, in footnotes regarding the (purported) existence of such agreements, CDK alleges that "[u]pon information and belief, the 'Non-Disclosure' Agreement[s] signed by Dansby [and Abbott] contained substantially the same non-competition, non-solicitation, and non-disclosure provisions as the Backs, Auel, and Sparks Agreements." [ECF No. 1 ¶¶ 67 n.1, 82 n.1.] To this end, CDK appears not to have reviewed (and may not even have) the alleged agreements on which its breach of contract claims against Dansby and Abbott are based. Notwithstanding this, based on CDK's speculative assertion, CDK's Complaint proceeds as if the language in the Dansby and Abbott agreements is *identical* to the Backs/Auel/Sparks agreements, including with respect to the agreements' alleged "purpose," *id.* ¶ 69, 84; the definitions of certain terms, *id.* ¶¶ 70-71, 85-86; the existence and terms of certain non-disclosure, non-competition, and other restrictive provisions, *id.* ¶¶ 72-74, 87-88; and the type of relief available under the purported agreements. *Id.* ¶ 75, 89. This is all despite that the purported Dansby and Abbott agreements are titled differently and several years older than the Backs/Auel/Sparks agreements; and that Dansby's agreement contracts with a third-party ("ADP").

"[T]here is no express authorization in the federal rules for pleading on information and belief." *Cassidy v. Teaching Co., LLC*, No. 13-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (citing Charles A. Wright and Arthur R. Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2013)). However, under *Iqbal* and *Twombly*, pleading certain matters "upon information and belief" is permissible "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (quoting *Tankersely v. Albright*, 514 F.2d 956,

13

964 n. 16 (7th Cir. 1975)) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed.").[5]

Neither exception applies in this action. *First*, the facts supporting the existence of any restrictive agreement between CDK and Dansby or Abbott (and the terms of such agreement) are exclusively within **CDK's** possession, not the possession of Dansby or Abbott. Indeed, Dansby and Abbott specifically deny that they entered into any restrictive agreement with CDK (to this end, Dansby and Abbott each maintain that they were each specifically told that no such agreement existed upon their resignation from CDK before joining Tekion). Moreover, the blank acknowledgement that CDK purports represents proof of such restrictive agreement between it and Dansby facially states that the referenced "Non-Disclosure Agreement" is between Dansby and a third-party (ADP), not CDK. *Second*, considering all of the foregoing—i.e., that (a) Dansby and Abbott deny entering into restrictive agreements; (b) with respect to Dansby, the purported acknowledgement of such an agreement is with ADP, not CDK; and (c) Dansby and Abbott's purported agreements are titled differently and several years older from the restrictive agreements CDK seeks to impose against them—there is no "factual information that makes [CDK]'s inference [of the existence of an identical restrictive agreement to those between CDK and Backs/Auel/Sparks] plausible."

Consequently, CDK's "upon information and belief" allegations are insufficient to demonstrate the existence of any contract between CDK and either Dansby or Abbott, and thus

---

[5] *See also Kline v. Mortg. Elec. Registration Sys., Inc.*, No. 08-408, 2011 WL 1233642, at *6 (S.D. Ohio Mar. 29, 2011) (citing *Artista Records* and finding that unjust enrichment allegations based "upon information and belief" were permissible because they are "fact[s] peculiarly within the possession of [defendant]"); "*Wu v. Passive Wealth Builders, LLC*, No. 21-02205, 2023 WL 121997, at *5 (W.D. Tenn. Jan. 6, 2023) (citing *Cassidy* finding that allegations of fraud "upon information and belief" were permissible where "the facts that would clarify the relationship are within the control of [defendants]"); *Drofa v. Passive Wealth Builders, LLC*, No. 22-02191, 2023 WL 172035, at *5 (W.D. Tenn. Jan. 12, 2023) (same as *Wu*).

14

these claims (Counts IX and X) should be dismissed.

### 2. Even if Dansby Were Subject to a Restrictive Agreement as Alleged, CDK Cannot Enforce It

Dansby's alleged "acknowledgement" of a restrictive agreement states on its face that the "agree[ment] and "acknowledgement" of the document—an "ADP Non-Disclosure [A]greement"—"must be completed prior to your actual start with ADP." [ECF No. 1-5.] This document is dated May 5, 2011, long before CDK was formed. *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-864, 2023 WL 4305901, at *8 (N.D. Ill. June 29, 2023) ("CDK was formed in 2014 when [ADP] spun off its Dealer Services division into a stand-alone company, CDK.").

Under Ohio law, non-compete agreements are not automatically assignable. *Fitness Experience, Inc. v. TFC Fitness Equip., Inc.*, 355 F. Supp. 2d 877, 888 (N.D. Ohio 2004). "When a non-compete agreement is silent about assignability, courts must give controlling effect to the intent of the parties which is primarily ascertained by determining 'whether the covenant employs words which indicate that assignment was contemplated and whether assignability is necessary to protect the goodwill of the business being sold.'" *Id.* at 889 (quoting *Blakeman's Valley Office Equip., Inc. v. Bierdeman*, 786 N.E.2d 914, 920 (Ohio Ct. App. 2003)). In the instant case, as a result of CDK's actions (or inactions), there is no written agreement regarding Dansby for the Court to review. To this end, there is no language regarding any choice-of-law clause or the purported agreement's assignability. Consequently (and as a result of CDK's own actions regarding the maintenance of its alleged employee records), the Court must assume that the purported agreement is silent about assignability. Where an agreement lacks language regarding its assignability, "courts must consider the nature of the business and the particular employee's position in order to weigh this factor's effect on evincing the parties' intent regarding assignability." *Id.* at 890. Relevant factors include "the importance of non-compete agreements to

15

the protection of the good will of the business sold[, which] operates on a spectrum." *Id.* In *Fitness Experience*, the Court found that, notwithstanding the "importance" of the defendants' positions (i.e., managerial roles), the subject agreements were not necessary to protect the plaintiff "against employees resigning and taking valued clients with them," and thus that the parties to the agreements did not intend for them to be assignable. *Id.*

In the instant case, Dansby was a "Senior Technical Support Analyst," whose job duties essentially involved providing technical support for clients that contacted CDK's helpdesk to troubleshoot questions and/or issues the clients were experiencing with CDK's DMS software. [ECF No. 1 ¶ 65.] A technical support employee is not the type of position where a restrictive agreement is necessary to protect Plaintiff from employees resigning and taking CDK's clients—car manufacturers and licensed dealerships—from leaving CDK to do business with the technical support employee's new employer. Consequently, because any alleged restrictive agreement that Dansby had with ADP is not assignable, CDK does not have a right to enforce it, and CDK's claim for breach of contract against Dansby (Count IX) should be dismissed.

### D. CDK's Tortious Interference with Contractual Relationships Claim (Count IV) Should Be Dismissed

Count IV of CDK's Complaint alleges that Tekion tortiously interfered with CDK's restrictive agreements with the Individual Defendants. The elements of a claim for tortious interference with a contractual relationship under Ohio law are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Horter Inv. Mgmt., LLC v. Cutter*, 257 F. Supp. 3d 892, 923 (S.D. Ohio 2017).

"The OUTSA preempts 'conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret.'" *Shepard & Assocs., Inc. v.*

16

*Lokring Tech., LLC*, No. 20-02488, 2022 WL 2398392, at *5 (N.D. Ohio July 1, 2022) (quoting Ohio Rev. Code § 1333.67). This preemption extends to all claims based on misappropriation of information regardless of whether the information ultimately rises to the level of a "trade secret." *Miami Valley*, 852 F. Supp. 2d at 940; *Stolle Mach. Co. v. RAM Precision Indus.*, 605 F. App'x 473, 484 (6th Cir. 2015) (finding Ohio courts construe the OUTSA to preempt causes of actions based on allegations of confidential information, even if that information is ultimately not deemed a trade secret); *Allied Erecting and Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 720-22 (N.D. Ohio 2009) ("[C]ourts have generally found that the [Uniform Trade Secret Act] preempts 'all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret status.'" (internal citations omitted)); *Easton Sports, Inc. v. Warrior LaCrosse, Inc.*, No. 05-72031, 2005 WL 2234559, at *2 (E.D. Mich. Sept. 14, 2005) ("Dismissal of [Ohio and Michigan law trade secret] claims is appropriate even assuming a dispute exists whether the information alleged transferred from [plaintiff's employees] to [defendants] was in fact a trade secret or confidential information.').

In the instant action, to the extent CDK's tortious interference claim relates to Tekion "knowingly receiving confidential, proprietary, and trade secret information from the Individual Defendants and using that information to compete directly with CDK and to divert sales from CDK, causing CDK to suffer lost profits" and "retaining the benefits of the Individual Defendants' breaches of their obligations to CDK," the claim should be dismissed because it is preempted by the OUTSA.

In addition, as set forth above, because CDK has failed to adequately plead the existence of any restrictive agreements between it and Dansby or Abbott, CDK has failed to establish the first element of a tortious interference claim (i.e., the existence of a contract), and thus this claim

17

should be dismissed as it relates to Dansby and Abbott.

  E. **CDK's Unjust Enrichment Claim (Count V) Should Be Dismissed**

Count V of CDK's Complaint for unjust enrichment alleges that Defendants have been unjust enriched by Defendants' "recei[pt] and use[]" of "CDK's confidential, proprietary, and trade secret information." [See ECF No. 1 ¶¶ 145-48.] However, like with CDK's tortious interference claim (Count IV), CDK's unjust enrichment claim is similarly preempted . *Cincom Sys., Inc. v. LabWare, Inc.*, No. 20-83, 2021 WL 675437, at *5 (S.D. Ohio Feb. 22, 2021) (citing *Novus Grp., LLC v. Prudential Fin., Inc.*, 2019 WL 4452708, at *10 (S.D. Ohio Sept. 17, 2019) (conversion and unjust enrichment claims preempted by OUTSA on a Rule 12(b)(6) motion to dismiss); *Maatuk v. Emerson Elec.*, 2017 WL 9485679, at *13 (N.D. Ohio Nov. 14, 2017), *report and recommendation adopted*, 2018 WL 562934 (N.D. Ohio Jan. 24, 2018), *aff'd sub nom. Maatuk v. Emerson Elec., Inc.*, 781 F. App'x 1002 (Fed. Cir. 2019) (unjust enrichment claim preempted by OUTSA on a Rule 12(c) motion for judgment on the pleadings); *Employee Health Sys., LLC v. Sterling Commerce (Am.), LLC*, 2013 WL 12123865, at *7 (S.D. Ohio Sept. 30, 2013) (unjust enrichment claim preempted by OUTSA on a Rule 12(b)(6) motion to dismiss)).

**IV.** **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court GRANT their Motion and enter an order dismissing Counts I, II, III, IV, V, IX, and X of Plaintiff's Complaint, and awarding Defendants any other relief this Court deems equitable and just, including its fees and costs.

            Respectfully submitted,

            BRICKER GRAYDON LLP

            */s/ Michael A. Roberts*
            Michael A. Roberts (0047129)
            *Trial Attorney*

BRICKER GRAYDON LLP
312 Walnut St., Suite 1800
Cincinnati, OH 45202
513.629.2799
Fax: 513.333.4330
mroberts@brickergraydon.com
*Trial Attorney For Defendants*

Patrick F. Hickey
Hickey, Hauck, Bishoff, Jeffers & Seabolt
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.964.9079 phickey@hhbjs.com
*Application for Admission Pro Hac pending*

Ben Shipper
Hickey, Hauck, Bishoff, Jeffers & Seabolt
One Woodward Avenue, Suite 2000
Detroit, MI 48226
313.888.9607
bshipper@hhbjs.com
*Application for Admission Pro Hac pending*