**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| **CDK GLOBAL, LLC** | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 1:23-cv-00357 |
| | : | |
| -v- | : | |
| | : | JUDGE: Susan J. Dlott |
| **TEKION CORP,** *et. al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## PLAINTIFF CDK GLOBAL, LLC'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS ABBOTT, BACKS, AUEL, DANSBY, AND SPARKS

Pursuant to Federal Rule of Civil Procedure 65(A), Plaintiff CDK Global, LLC ("CDK" or "Plaintiff") respectfully moves this Court to issue a preliminary injunction enjoining and prohibiting Defendants Christopher Abbott ("Abbott"), Andrew Backs ("Backs"), Demi Auel ("Auel"), Richard Dansby ("Dansby"), and Tyler Sparks ("Sparks") (collectively, the " Individual Defendants") from continuing to violate the valid and binding restrictive covenants to which they agreed – as consideration of their employment with CDK – for one year following the date of the grant of the injunction sought by this Motion.

CDK is entitled to this relief because it has a strong likelihood of success on the merits; CDK will suffer irreparable injury if the Individual Defendants are not enjoined; the issuance of a preliminary injunction will not cause substantial harm to others; and the public interest will be served by the issuance of a preliminary injunction.

Accordingly, for the reasons set forth in the accompanying Memorandum in Support, CDK respectfully requests that the Court grant its Motion for Preliminary Injunction.  A proposed order is attached.

Respectfully submitted,

*/s/ Samuel N. Lillard*
Samuel N. Lillard (0040571)
Jantzen D. Mace (0099005)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Bank Building
88 E. Broad Street, Suite 2025
Columbus, OH 43215
Phone: 614.494.0420
Fax:     614.633.1455
samuel.lillard@ogletree.com
jantzen.mace@ogletree.com

*Attorneys for CDK Global, LLC*

## MEMORANDUM IN SUPPORT

## I.   INTRODUCTION

CDK provides industry-leading auto dealer software solutions.  The Individual Defendants agreed to honor reasonable restrictive covenants memorialized in agreements each of them signed as a condition of their employment with CDK.  Each of the Individual Defendants were trained and had access and knowledge of CDK's confidential and proprietary information related to CDK's integration and automated tools and key customer requirements.  The honoring of Defendants' contractual obligations protects CDK's confidential and proprietary information from being used by the Individual Defendants and Defendant Tekion to unfairly compete with CDK.

All five of the Individual Defendants now work for Tekion Corp. ("Tekion"), a direct national competitor of CDK, in similar and related positions.  In addition, further attempts have been made by one or more Defendants to solicit other CDK employees to join them.  Accordingly, each of the Individual Defendants are clearly in breach of their contractual obligations to CDK and CDK will continue to suffer irreparable harm unless the Court enjoins the Individual Defendants from continuing to breach those obligations.

## II.   STATEMENT OF FACTS

CDK is a global company which provides integrated information technology and digital marketing to the automotive, heavy truck, recreation, and heavy equipment industries.  (Compl. ¶ 17).  CDK provides technology and software to 70% of large-scale auto dealers.  Abbott, Banks, Auel, Dansby, and Sparks (the "Individual Defendants") are former CDK employees who provided key support to CDK's major customers.  As part of their regular job duties, the Individual Defendants routinely worked with CDK's confidential and proprietary business information in their various roles with CDK.  (Id. at ¶¶ 25, 39, 53, 66, 81).  Because of their extensive training at CDK's expense and access to and use of confidential customer information, the Individual

Defendants executed restrictive covenant agreements (the "Agreements") containing non-competition, non-solicitation, and confidentiality obligations. (Id. at ¶¶ 26, 40, 54, 67, 82). Within the past year, each of the Individual Defendants were aggressively recruited by Tekion, resigned from CDK, and immediately began working for Tekion, a direct competitor of CDK. These actions by the Individual Defendants are in direct violation of their respective Agreements.

CDK now respectfully asks the Court to issue a preliminary injunction against each of the five Individual Defendants enjoining them from continuing to breach their respective Agreements. As set forth below, each factor that the Court must consider with regard to a preliminary injunction motion favors the issuance of an injunction in this matter.

## III.     CDK IS ENTITLED TO INJUNCTIVE RELIEF

"A district court must balance four factors in determining whether to grant a preliminary injunction: '(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.'" *Am. Civil Liberties Union Fund. Of Mich. V. Livingston Cnty.*, 796 F.3d 636, 641 (6th Cir. 2015), quoting *Bays v. City of Fairborn,* 668 F.3d 814, 818-19 (6th Cir. 2012). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1123, 1129 (6th Cir. 1985). Here, the Court should grant CDK's Motion because each of these four factors favors the issuance of injunctive relief.

### A.      CDK Has a Strong Likelihood of Success on the Merits Regarding the Individual Defendants' Noncompetition Obligations

A party is not required to prove its case in full at the preliminary injunction stage, as the evidence "is less complete than a trial on the merits." *Stooksbury v. Ross*, 528 F.App'x 547, 558

(6th Cir. 2013), citing *Certified Restoration Dry Cleaning Network v. Tenke,* 511 F.3d 535, 550

(6th Cir. 2007); *see also In re Eagle-Picher Indus., Inc.,* 963 F.2d 855 (6th Cir. 1992) (holding that

the district court did not err in granting a preliminary injunction where it relied primarily on the

three non-likelihood factors).  Rather, this factor weighs in favor of granting injunctive relief if the

plaintiff "shows more than a mere possibility of success" and, instead "raise[s] questions going to

the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation

and thus for more deliberate investigation."  *Stooksbury,* 528 F.App'x at 558, citing *Six Clinics*

*Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir. 1997).

　　　When looking at the merits of this case, Defendant Sparks' Agreement contains an Ohio

choice of law provision and the other four Defendants signed Agreements containing an Illinois

choice of law provision.  "[A] federal court sitting in diversity applies the choice-of-law rules of

the state in which the court sits."  *Performance Contracting Inc. v. DynaSteel Corp.,* 750 F.3d 608,

611 (6th Cir. 2014).  "Ohio has adopted sections 187 and 188 of the Restatement (Second) of

Conflict of Laws to govern choice of law in contract disputes."  *Wise v. Zwicker & Associates,*

*P.C.,* 780 F.3d 710, 714-15 (6th Cir. 2015).  The Second Restatement on Conflict of Laws holds

that:

> The law of the state chosen by the parties to govern their contractual rights and
> duties will be applied . . . unless the chosen state has no substantial relationship to
> the parties or the transaction . . . or application of the law of the chosen state would
> be contrary to a fundamental policy of a state which has a materially greater interest
> than the chosen state in determination of the particular issue.

*Schulke Radio Prods., Ltd. V. Midwestern Broad. Co.,* 6 Ohio St. 3d 436, 453 N.E.2d 683 (1983)

(citing Restatement of Law 2d (1971) 561, Conflict of Laws, Section 187)).  As none of those

concerns apply here, the Court should apply Ohio and Illinois law to determine that CDK has a

strong likelihood of success on the merits regarding the Individual Defendants' breaches of their

respective Agreements and the noncompetition, nonsolicitation, and confidentiality obligations contained therein.

### 1. Sparks Breached his Agreement Pursuant to Ohio Law

Again, Defendant Sparks' Agreement contains an Ohio choice of law provision. *See* Exhibit C, p. 6. "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a binding contract or agreement; (2) the non-breaching party's performance of its contractual obligations; (3) the other party's failure to fulfill its contractual obligations without legal excuse; and (4) the non-breaching party suffered damages as a result of that failure." *List Indus., Inc. v. Umina,* No. 3:18-cv-199, 2021 U.S. Dist. LEXIS 128716, at *14 (S.D. Ohio July 12, 2021) (citing Ohio law). CDK has a high likelihood of success on the merits with regard to Sparks' breach of his Agreement.

### i. The Sparks Agreement Contains a Reasonable, Binding Non-Compete Provision

"Under Ohio law, 'reasonable non-competition agreements are enforceable and those that are unreasonable are enforceable to the extent necessary to protect the employer's legitimate business interests." *Handel's Enters. V. Schulenburg,* No. 4:18-cv-00508, at *16 (N.D. Ohio Jan. 27, 2020), quoting *Convergys Corp. v. Wellman,* No. 1:07-cv-509, 2007 WL 4248202, at *6 (S.D. Ohio Nov. 30, 2007). A non-competition agreement "is reasonable if it is no greater than required for the protection of the employer, does not impose an undue hardship on the employee, and is not injurious to the public." *Id.*

The non-competition provision of the Sparks Agreement prohibits Sparks from being employed by a Competing Business within the same geographic area where he worked for a period of 12 months from the termination of his employment with CDK. Ex. C, p. 4. Courts in Ohio have upheld similar and more expansive temporal and geographic restrictions as reasonable for

non-competition agreements. *See Life Line Screening of Am., Ltd. V. Calger,* 145 Ohio Misc. 2d 6, 19 (2006) (collecting cases and observing "[n]umerous Ohio decisions have upheld contracts calling for two-year periods or longer"); *UZ Engineered Products Co. v. Midwest Motor Supply Co.,* 147 Ohio App. 3d 382 (Ohio Ct. App. 2001) (enforcing two-year restrictive covenant in employment agreement); *Try Hours, Inc. v. Douville,* 985 N.E.2d 955 (Ohio Ct. App. 2013) (upholding nationwide covenant not to compete); *Blakeman's Valley Office Equip., Inc. v. Bierdeman,* 786 N.E.2d 914 (Ohio Ct. App. 2003) (enforcing covenant not to compete that spanned three counties); *Procter & Gamble Co. v. Stoneham,* 747 N.E.2d 268 (Ohio Ct. App. 2000) (finding three-year non-compete with worldwide restriction was valid and enforceable).

Further, the Sparks Agreement's non-competition provision does not impose an undue hardship on Sparks, nor is it injurious to the public. Sparks' non-competition covenant does not preclude Sparks from all gainful employment, it only prohibits him from working for a competitor within one year of his separation from CDK. This District has held that such restrictions do not rise to the level of "undue hardship." *PUI Audio, Inc., v. Broek,* No. 3:21-cv-284, at *9 (S.D. Ohio Oct. 21, 2021); *See also AK Steel Corp. v. Miskovich,* No. 1:14-cv-174, 2014 WL 11881030, at *4 (S.D. Ohio Mar. 3, 2014) ("[a]ll non-competition agreements impose some hardship on the employee who leaves the employer; that is an inherent aspect of such agreements"). As such, the non-competition provision of the Sparks Agreement is reasonable and is binding on Sparks.

### ii.    CDK Performed Its Obligations Under the Sparks Agreement

CDK's obligations to Sparks under the Sparks Agreement are listed on Page 1 of the Agreement:

> employing [Sparks], compensating [Sparks], providing [Sparks] with confidential information, providing [Sparks] with benefits, providing [Sparks] with administrative and/or other support; providing [Sparks] with the benefit of CDK's

> research, know how, customer and client information, market strategies and
> business plans[.]

CDK fulfilled each and every one of these responsibilities from Sparks' start date in 2016 until his resignation in December 2022. As such, CDK performed its obligations under the Sparks Agreement.

### iii. Sparks Breached His Non-Compete Agreement

As detailed above, the non-competition provision of the Sparks Agreement prohibits Sparks from working for a Competing Business within the same geographic region in which he worked for CDK for a period of one year from his separation from CDK. Tekion is a cloud technology company focused on business applications aimed at the automotive retail industry operating across the country which is seeking to further develop and expand its automotive software business. (Compl. ¶¶ 21-22). As such, Tekion is a direct competitor of CDK and is considered a "Competing Business" under the terms of the Sparks Agreement. *See* Ex. C, p. 1. Sparks resigned his employment with CDK in December 2022 and began his employment with Tekion in January 2023 at a location which is less than 15 miles from the location where he worked for CDK. Accordingly, Sparks began working for a Competing Business within the same geographic region only one month after separating from CDK, which is a clear violation of the non-competition provision of the Sparks Agreement. As Sparks does not have any legal excuse for his actions, he is in clear breach of the Sparks Agreement.

### iv. Sparks' Breach Has Caused CDK to Suffer Damages

By signing the Sparks Agreement, Sparks specifically acknowledged and agreed "that a breach of any provision of this Agreement by me will cause serious and irreparable damage to CDK that will be difficult to quantify and for which a remedy at law for monetary damages alone may not be adequate." Ex. C, p. 6. He further acknowledged and agreed that a violation of his

covenant not to compete "will cause irreparable injury to CDK."  *Id.*  Accordingly, Sparks has already acknowledged that his breach of the Sparks Agreement has caused CDK to suffer damages. Further discussion regarding irreparable injury is detailed below in Section III(B).

As CDK can prove all four elements for breach of contract under Ohio law, CDK has a strong likelihood of success on the merits regarding Sparks' breach of the Sparks Agreement.  As such, with regard to Sparks, the first factor this Court must consider when ruling on CDK's preliminary injunction motion militates in favor of CDK.

### 2. Backs, Auel, Dansby, and Abbott Breached Their Respective Agreements Pursuant to Illinois Law

The Backs, Auel, Dansby, and Abbott Agreements each contain an Illinois choice of law provision.  *See, e.g.,* Ex. A, p. 7; Ex. B, p. 7.[1]  Under Illinois Law, restrictive covenants are carefully scrutinized "because they operate as partial restrictions on trade."  *Fifield v. Premier Dealer Services, Inc.*, 993 N.E.2d 938, 942 (Ill. App. Ct. 2013).  In order for a restrictive covenant to be valid and enforceable, the terms of the covenant must be reasonable in geographic and temporal scope and necessary to protect an employer's legitimate business interest.  *Prairie Rheumatology Assocs. V. Francis*, 24 N.E.3d 58, 62 (Ill. App. Ct. 2014).  But before considering whether a restrictive covenant is reasonable, the Court must make two determinations: (1) whether the restrictive covenant is ancillary to a valid contract; and (2) whether the restrictive covenant is supported by adequate consideration.  *Fifield,* 993 N.E.2d at 942.

Here, the non-competition covenants at issue are ancillary to CDK's employment relationship with Backs, Auel, Dansby, and Abbott; are supported by adequate consideration; and are reasonable when analyzed under Illinois law.

---

[1] As set forth in the Complaint, the "Non-Disclosure" Agreements signed by Abbott and Dansby contained substantially the same provisions as the Backs and Auel Agreements.

i. **The Non-Competition Covenants are Ancillary to CDK's Employment Relationships with Backs, Auel, Dansby, and Abbott**

It is well-settled law in Illinois that "[a] non-compete covenant entered into as part of an at-will employment agreement satisfies the ancillary prong" of this analysis. *W. Capra Consulting Grp., Inc. v. Snyder*, No. 1:19 C 4188, at *16 (N.D. Ill. Aug. 20, 2019), citing *Arthur J. Gallagher & Co. v. Roi* 2015 IL App (1st) 140786-U, ¶ 46 (1st Dist. 2015); *Lawrence & Allen, Inc. v. Cambridge Human Res. Grp., Inc.,* 292 Ill. App. 3d 131, 137, 685 N.E.2d 434, 440 (2d Dist. 1997). The ancillarity requirement is satisfied regardless of if the at-will employment agreement is in writing. *Lawrence,* 292 Ill. App. 3d at 137 ("'To be enforceable, a covenant not to compete must be ancillary to *either* a transaction (an otherwise valid contract), *or* a valid relationship. *** Therefore, a noncompetition covenant entered into by an at-will employee, whether the employee is employed under a written or oral agreement, complies with the requirement of ancillarity.'" (quoting *Abel v. Fox,* 274 Ill. App.3d 811, 820 (4th Dist. 1995) (emphasis in original)).

Section 187 of the Restatement (Second) of Contracts supports this analysis in its discussion of the doctrine of ancillarity with regard to restrictive covenants, stating: "A promise to refrain from competition that imposes a restraint that is not ancillary to an otherwise valid transaction *or relationship* is unreasonably in restraint of trade." (Emphasis added.) Restatement (Second) of Contracts § 187, at 38 (1981). Section 188 further states:

"(2) Promises imposing restraints that are ancillary to a valid transaction *or relationship* include the following:

***

(b) a promise by an employee or other agent not to compete with his employer or other principal."

(Emphasis added.) Restatement (Second) of Contracts § 188(2)(b), at 41 (1981). Comment g to section 188 states in pertinent part: "A restraint may be ancillary to a relationship although, as in

the case of an employment at will, no contract of employment is involved." Restatement (Second) of Contracts § 188, Comment g, at 45 (1981).

Backs, Auel, Dansby, and Abbott all entered into at-will employment relationships with CDK at or around the same time as they executed their individual restrictive covenant Agreements. Accordingly, their noncompetition covenants are "not a 'naked' restraint on trade, but instead [are] merely ancillary to the primary purpose of the relationship: an employer-employee relationship." *Gallagher v. Roi*, No. 1-14-0786, at *19 (Ill. App. Ct. 2015), citing *Abel,* 274 Ill. App.3d at 820. As Backs', Auel's, Dansby's, and Abbott's noncompetition covenants were subordinate to the purpose of their employment relationship with CDK, their noncompetition covenants satisfy the requirement of ancillarity.  *See Woodfield Group, Inc. v. DeLisle,* 295 Ill. App. 3d 935, 942 (Ill. App. Ct. 1998).

### ii. The Non-Competition Covenants are Supported by Adequate Consideration

"Illinois courts have held that 'continued employment for a substantial period' following execution of a restrictive covenant may provide sufficient consideration to support the covenant." *Allied Waste Services of North America, LLC v. Tibble*, 177 F.Supp. 3d 1103, 1107 (N.D. Ill. 2016), quoting *Brown and Brown, Inc. v. Mudron*, 379 Ill.App.3d 724, 887 N.E.2d 437, 440 (2008).  "Illinois courts have generally held that two years or more of continued employment constitutes adequate consideration."  *Id.*

Backs, Auel, Dansby, and Abbott each enjoyed well over two years of continued employment after executing their respective Agreements.  Backs was continuously employed by CDK for nearly three and half years, from September 2019 until January 2023; Auel was continuously employed by CDK for over three years, from March 2020 to April 2023; Dansby was continuously employed by CDK for approximately 12 years, from May 2011 to May 2023; and

Abbott was continuously employed by CDK for nearly seven years, from January 2016 to November 2022. (Compl. ¶¶ 23, 37, 64, 79). As additional consideration, Backs, Auel, Dansby, and Abbott were each paid salary and benefits – along with regular compensation increases – during these years of continuous employment. As such, their non-competition covenants were supported by adequate consideration.

### iii. The Non-Competition Covenants are Reasonable

Under Illinois law, "[a] restrictive covenant . . . is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *W. Capra Consulting Grp.*, No. 1:19 C 4188, at *17, citing *Reliable Fire Equip. Co. v. Arredondo,* 2011 IL 111871, ¶ 17, 965 N.E.2d 393, 396 (Ill. 2011). Whether a restrictive employment covenant protects legitimate business interests is determined by the totality of the circumstances. *Id.* 965 N.E.2d at 403. Illinois courts have recognized two legitimate business interests justifying the enforcement of non-compete agreements:

> (1) where the customer relationships are near-permanent and but for the employee's association with the employer the employee would not have had contact with the customers; and (2) where the former employee acquired trade secrets or other confidential information through his employment and subsequently tried to use it for his own benefit.

*Outsource Intern., Inc. v. Barton*, 192 F.3d 662, 666 (7th Cir. 1999) (citations omitted). Both of the above legitimate business interests justify the enforcement of the non-compete Agreements at issue in this case.

Whether customers are near permanent "turns in large degree on the nature of the business involved, and certain businesses are just more amenable to success under" that theory. *Office Mates 5, N. Shore, Inc. v. Hazen,* 599 N.E.2d 1072, 1081 (1st Dist. 1992). Among those are

businesses "who sell their customers a unique product or service," *id.* (citing *A.B. Dick Co. v. Am. Pro-Tech*, 514 N.E.2d 45 (1sdt Dist. 1987) and *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045 (Ill. App. Ct. 1985)); and those "under contract with customers." *Id.*, 599 N.E.2d at 1082. Under these parameters, CDK's customer relationships are near-permanent given the unique services provided and the contracts that it has with its customers. Further, Backs, Auel, Dansby, and Abbott would not have had contact with CDK's customers but for their association with CDK. Moreover, as outlined in the Complaint, Backs, Auel, Dansby, and Abbott each acquired trade secrets and other confidential customer information through their employment with CDK. Discovery in this case will show the exact extent to which they have subsequently tried to use such trade secrets and confidential customer information for their own benefit.

Time and place restrictions also factor into determining whether a restrictive covenant reasonably protects legitimate business interests. The non-compete provisions in the Backs, Auel, Dansby, and Abbott Agreements last for only one year, which Illinois courts have found to be reasonable. *See Mohanty v. St. John Heart Clinic, S.C*, 225 Ill. 2d at 78, 866 N.E.2d at 100 (Ill. 2006) (upholding three- and five-year restrictive employment covenants); *Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys., LLC*, No. 02 C 5403, 2003 WL 1057929, at *20 (N.D. Ill. Mar. 10, 2003), *aff'd sub nom. Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys*., 428 F.3d 706 (7th Cir. 2005) (stating "[n]on-compete agreements lasting for one year (or even more) have been upheld" in Illinois and listing Illinois Supreme Court cases). The twelve-month time restrictions in the Backs, Auel, Dansby, and Abbott Agreements are therefore well within what Illinois courts consider to be reasonable.

The same is true of the applicable geographic restrictions. Each of the relevant Agreements contain a geographic limit of "the geographic area where I worked, represented CDK, or had

Material Business Contact with CDK's Clients or operations in the two (2) year period preceding the termination of my employment from CDK."  Similar geographic limits have been upheld under Illinois law.  *See, e.g. Allied Waste Services of North America,* 177 F.Supp. 3d 1103 (finding non-compete with geographic limitation of "'any geographic regions, areas, markets, districts, territories, counties, parishes or other locations' for which he was responsible, or performed duties, on behalf of [plaintiff] during the last 12 months of [defendant's] employment'" to be a reasonable).  Such restrictions do not create an undue hardship on Backs, Auel, Dansby, or Abbott as they do not preclude the individuals from all gainful employment, only prohibit them from unfairly competing with CDK for one year after their separation from CDK.  Similarly, these restrictions are not injurious to the public because enforcing the covenants does not prevent the public or plaintiff's competitors from doing business.  *See Wessel Co. v. Busa,* 28 Ill. App. 3d 686, 329 N.E.2d 414 (1st Dist. 1975).

Given CDK's near-permanent customer relationships, the trade secret and confidential information it provided to Defendants, and the reasonable time and geographic limitations on the non-compete provisions, the restrictive covenants at issue are reasonable and necessary for the protection of CDK's legitimate business interests.  As such, CDK has a high likelihood of success on the merits of its non-competition claims against Backs, Auel, Dansby, and Abbott.

**B.     Absent a Preliminary Injunction, CDK Will Suffer Irreparable Harm**

As an initial matter, CDK does not need to show irreparable harm to obtain an injunction enforcing the Individual Defendants' Agreements.  Each of the Individual Defendants acknowledged in their Agreements that their breach of said Agreement would "cause serious and irreparable damage to CDK" and further agreed that such breach would entitle CDK to injunctive relief.  *See, e.g.,* Exhibit A, p. 7; Exhibit C, p. 6.  Irreparable harm provisions such as this are valid and enforceable.  *See, e.g., AK Steel,* 2014 U.S. Dist. LEXIS 197389 at *13 (S.D. Ohio Mar. 3,

2014) (adopting agreement's provision permitting plaintiff to seek relief "to restrain the breach and otherwise enforce the non-competition agreement" to obtain an injunction); *PUI Audio, Inc. v. Broek*, No. 3:21-cv-284, 2021 U.S. Dist. LEXIS 202846 (S.D. Ohio Oct. 21, 2021) (adopting agreement's provision which provided that the employee agreed that a breach of the non-competition provision could not be wholly compensated for by monetary damages and that any remedy at law would be inadequate").

Nevertheless, irreparable harm exists here. The Sixth Circuit Court of Appeals has held that "[t]he likely interference with customer relationships resulting from the breach of a non-compete agreement is the kind of injury for which monetary damages are difficult to calculate." *York Risk Servs. Grp. V. Couture,* No. 19-1655, at *10 (6th Cir. Sep. 27, 2019), quoting *Certified Restoration,* 511 F.3d at 550. Indeed, "the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Certified Restoration,* 511 F.3d at 550, quoting *Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992)). This District has similarly held that an employer suffers irreparable harm when an employee breaches a non-competition or non-solicitation covenant because such a breach gives rise to unfair competition. *See PUI Audio*, 2021 U.S. Dist. LEXIS 202846 at *20; *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp.2d 848, 854-55 (S.D. Ohio 2000).

Further, the Court should apply the inevitable disclosure doctrine to find that the Individual Defendants' employment with Tekion constitutes irreparable harm on its own due to their possession of confidential and proprietary information. The Individual Defendants were extensively trained by CDK and worked closely with CDK's major customers and clients. Their employment with CDK provided them with access to and knowledge of CDK's confidential and proprietary information and such knowledge has been taken with them to Tekion mere weeks after

their employment ended with CDK. This is a direct violation of each Individual Defendants' non-competition Agreement. As each of the Individual Defendants agreed, this harm cannot be adequately compensated through monetary damages and therefore this factor weighs in favor of an injunction.

### C.     A Preliminary Injunction Will Not Cause Substantial Harm to Others

The issuance of a preliminary injunction in this case will cause no injury to others. No third parties would be harmed because the issuance of a preliminary injunction in this case would only have an impact on the parties to this lawsuit. *See Dealer Specialties, Inc. v. Car Data 24/7, Inc.* Case No. 1:15-cv-170 (S.D. Ohio Sep. 23, 2016) (finding no harm to third parties when the only injunctive relief requested is for Defendants to be held to the terms of their non-compete agreements with Plaintiff for one year).

With respect to the Individual Defendants themselves, any alleged harm is irrelevant. As noted above, each of the Individual Defendants agreed to the restrictions in their respective Agreements, agreed that those restrictions were reasonable and necessary for CDK's protection, and agreed that an injunction would be a fair remedy for any breach of their obligations. Any harm that the Individual Defendants would suffer from such an injunction is the direct result of their own voluntary choice to breach their respective Agreements and irreparably harm CDK. *See Petland v. Hendrix,* No. 204CV224, at *8 (S.D. Ohio Sept. 14, 2004) ("the self-inflicted harm to [defendants] that could result from the enforcement of the non-compete clause should not excuse [their] actions"). As for Tekion, the Individual Defendants' current employer, would not be harmed because it has no right to the confidential information in the Individual Defendants' possession. *See Avery Dennison,* 118 F. Supp. 2d at 855 (preliminary injunction would not harm new employer because "it has no right to the information").

### D.     A Preliminary Injunction Serves the Public Interest

Both employees and employers have an interest in knowing that their agreements are enforceable.  "'The public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts.'"  *H.H. Franchising Sys. v. CareSmart Sols.*, No. 1:21-cv-575, at *13 (S.D. Ohio Sep. 15, 2022), quoting *Handel's Enter., Inc. v. Schulenburg*, 765 F. App'x. 117, 123 (6th Cir. 2019); *see also Certified Restoration,* 511 F.3d at 551 ("Enforcement of contractual duties is in the public interest.").

Here, as set forth above, the contracts at issue are lawful and contain valid restrictive covenants.  As such, the public's interest would be served by an injunction from this Court enforcing the terms of the Individual Defendants' Agreements for one year following the date of the grant of the injunction sought.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant CDK's Motion for a Preliminary Injunction and enjoin the Individual Defendants from continuing to violate the valid and binding restrictive covenants in their respective Agreements for one year following the date of the grant of the injunction sought by this Motion.  A proposed order is attached.

Respectfully submitted,

*/s/ Samuel N. Lillard*
Samuel N. Lillard (0040571)
Jantzen D. Mace (0099005)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Bank Building
88 E. Broad Street, Suite 2025
Columbus, OH 43215
Phone: 614.494.0420
Fax:    614.633.1455
samuel.lillard@ogletree.com
jantzen.mace@ogletree.com
*Attorneys for CDK Global, LLC*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on August 10, 2023, a copy of the foregoing *Motion for Preliminary Injunction* was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of the filing will be sent to all parties by operations of the Court's electronic filing system.  Parties may access this filing through the Court's system, including the following:

Michael A. Roberts; mroberts@brickergraydon.com
Alexandra Berry; aberry@brickergraydon.com
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
T: 513.629.2799
F: 513.333.4330

Patrick F. Hickey; phickey@hhbjs.com
Ben Shipper; bshipper@hhbjs.com
Hickey, Hauck, Bishoff, Jeffers & Seabolt
One Woodward Avenue, Suite 2000
Detroit, MI 48226
T: 313.964.8600
F: 313.964.8601

*Attorneys for Defendants*

*/s/ Samuel N. Lillard*
Samuel N. Lillard (0040571)

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| **CDK GLOBAL, LLC** | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 1:23-cv-00357 |
| | : | |
| -v- | : | |
| | : | JUDGE: Susan J. Dlott |
| **TEKION CORP,** *et. al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

### [PROPOSED] ORDER GRANTING MOTION OF PLAINTIFF CDK GLOBAL, LLC FOR PRELIMINARY INJUNCTION AGAINST DEFENDANTS BACKS, AUEL, SPARKS, DANSBY, AND ABBOTT

Plaintiff CDK Global, LLC ("CDK"), having moved against Defendants Andrew Backs ("Backs"), Demi Auel ("Auel"), Tyler Sparks ("Sparks"), Richard Dansby ("Dansby"), and Christopher Abbott ("Abbott") (collectively, the "Individual Defendants") for preliminary injunction (the "Motion") pursuant to Federal Rule of Civil Procedure 65 to enjoin the Individual Defendants from breaching the restrictive covenants they signed as part of their employment with Plaintiff (the "Agreements"), for the reason that the Individual Defendants are presently in breach of their Agreements by virtue of their employment with Tekion Corp ("Tekion"), and the Court having reviewed the Complaint, the Motion, and the supporting memorandum of law and exhibits submitted therewith, the Court finds as follows:

1. CDK is likely to succeed in showing that Sparks breached the Sparks Agreement under Ohio law and that the Sparks Agreement is valid and enforceable because the restrictive covenants contained therein are reasonable and impose no greater restraints than necessary to protect the legitimate business interests of CDK.

2. CDK is likely to succeed in showing that Backs, Auel, Dansby, and Abbott breached their respective Agreements under Illinois law and that such Agreements are valid and enforceable because the restrictive covenants contained therein are reasonable and impose no greater restraints than necessary to protect the legitimate business interests of CDK.

3. CDK has and will continue to suffer irreparable harm as a result of the Individual Defendants' breach of their respective Agreements due to their knowledge of CDK's confidential and proprietary information being put to use to unfairly compete with CDK;

4. A preliminary injunction will not cause substantial harm to others because the each of the Individual Defendants voluntarily breached a valid, binding Agreement and neither they nor Tekion has a right to the confidential and proprietary information within their possession;

5. A preliminary injunction serves the public interest insofar as it would uphold a valid and enforceable contract entered into by an employer and an employee; and

**IT APPEARING** to the Court that the Individual Defendants are actively and presently in breach of their respective Agreements, unfairly competing with CDK through their employment with Tekion while in possession of CDK's confidential and proprietary information, and will continue to breach their Agreements unless restrained by an Order of the Court,

**THEREFORE, IT IS HEREBY ORDERED** that Defendants Backs, Auel, Sparks, Dansby, and Abbott are enjoined:

1. From using, disclosing, declaring, or revealing any information disclosed to them in the course of their employment with CDK, which is generally not known, or readily ascertained by proper means, to persons who are not employees of CDK, including, but not limited to, all information regarding the business methods, systems, processes, business

plans, customers, pricing, costs, sources of supply, and other information about the products, customers, services, suppliers, marketing plans, and business of CDK.

2. From, directly or indirectly, for themselves or any other person or business entity, competing with the business of CDK; becoming an employee of or performing services in any capacity for any person or business entity that competes with the business of CDK; directly or indirectly having an ownership interest of any kind or any interest of any kind in the revenue of a business entity that competes with CDK; doing business with any customer of CDK, or soliciting, diverting, or attempting to divert from CDK any customer or business whatsoever; calling on, soliciting, or contacting any potential customer the Individual Defendants called on, solicited, or contacted while employed with CDK during the last twelve months of their employment with CDK; soliciting or attempting to solicit any associate of CDK or employ any person employed by CDK for one (1) year following the entry of this injunction.

3. To, within ten (10) days of the entry of this Order, return to CDK any and all documents and materials, whether in physical or electronic form, containing confidential or proprietary CDK information which they took from CDK at the conclusion of their employment.

**SO ORDERED.**

Dated this _____ day of September, 2023.          UNITED STATES DISTRICT COURT


By:_____
    HON. SUSAN J. DLOTT
    United States District Judge

57694354.v1-OGLETREE