**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| **CDK GLOBAL, LLC** | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 1:23-cv-00357 |
| | : | |
| -v- | : | JUDGE: Jeffery P. Hopkins |
| | : | |
| **TEKION CORP,** *et. al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS COUNTS I, II, III, IV, V, IX, AND X OF PLAINTIFF'S COMPLAINT**

## I.    INTRODUCTION

Defendants Tekion Corp ("Tekion"), Andrew Backs ("Backs"), Demi Auel ("Auel"), Tyler Sparks ("Sparks"), Richard Dansby ("Dansby"), and Christopher Abbott ("Abbott") (collectively, "Defendants"), challenge the factual sufficiency of Plaintiff CDK Global, LLC's ("CDK" or "Plaintiff"), Complaint under Fed. R. Civ. P. 12(b)(6). Despite Defendants' attempt to impose a higher pleading standard on CDK, the only thing that is required of Plaintiff at this early stage is for it to articulate a minimal factual basis underpinning its legal claims. Considering the Complaint in the light most favorable to CDK, Plaintiff more than satisfied that minimal requirement. As a result, the Court should deny Defendants' Motion to Dismiss ("Defs. Mot.") in its entirety.

## II.    STATEMENT OF RELEVANT FACTS

CDK asserts ten causes of action against Defendants relating to the misappropriation of trade secrets, tortious interference, unjust enrichment, and breach of non-competition and non-solicitation obligations. These claims arise out of a scheme to raid CDK of its employees and use their knowledge about Plaintiff to divert business away from CDK to Tekion. This scheme is

intended to facilitate the expansion of Tekion's capabilities and to build up its business to directly compete with CDK. Compl., Doc #: 3, PageID #: 116, ¶ 147.

By way of background to this dispute, CDK is the global leader in the automotive software industry, serving nearly 15,000 retail locations in North America, with 16 locations in the US, Canada, and India. *Id*. at PageID #: 97, ¶ 17. The automotive software business is very competitive, and Tekion, which is one of CDK's direct competitors, is seeking to further develop and expand its own automotive software business. *Id*. at PageID #: 98, ¶¶ 18, 22. In furtherance of its expansion efforts, among other things, Tekion induced Backs, Auel, Sparks, Dansby, and Abbott (collectively, "Individual Defendants") to terminate their employment with CDK and work for Tekion, interfering with CDK's existing restrictive covenants with each of the Individual Defendants. *Id*. at PageID #: 115, ¶ 141.

By virtue of their positions with CDK, each of the Individual Defendants had access to CDK's confidential, proprietary, and trade secret information. *Id*. at PageID #: 108, ¶ 98. CDK uses reasonable efforts to maintain the secrecy of that information, including password protecting and restricting access to it. *Id*. at PageID #: 98, ¶ 20. Further, in consideration of their employment with CDK, all five of the Individual Defendants signed agreements containing non-competition, non-solicitation, non-disclosure, and confidentiality provisions (collectively, "Agreements"). *Id*. at PageID #: 108, ¶ 97. The purpose of the Agreements was, among other things, to protect against unfair competition and the public disclosure of CDK's trade secret and confidential information. *Id*. at PageID #: 99, ¶ 28; PageID #: 101, ¶ 42; PageID #: 103, ¶ 56; PageID #: 104, ¶ 69; PageID #: 106, ¶ 84. CDK uses the foregoing measures to protect its trade secrets because disclosure of such information could be used to CDK's detriment should such information fall into the hands of a competitor like Tekion. *Id*. at PageID #: 98, ¶ 18. This is a truly compelling concern here since

Tekion is seeking to further develop and expand its automotive software business and compete directly with CDK. *Id.* at PageID #: 98, ¶ 22.

Consistent with Tekion's scheme to raid CDK of its employees, each of the Individual Defendants resigned from CDK and immediately began working for Tekion over a seven month period beginning in November 2022 and ending in May 2023. *Id.* at PageID #: 100, ¶¶ 35-36; PageID #: 102, ¶¶ 49-50; PageID #: 103-04, ¶¶ 62-63; PageID #: 105, ¶¶ 77-78; PageID #: 107, ¶¶ 90-91. In doing so, the Individual Defendants breached their Agreements with CDK, disclosed CDK's trade secrets to Tekion, and used the trade secrets to assist Tekion in building up its software business. *Id.* at PageID #: 108, ¶ 100. Such conduct facilitated Tekion's ability to compete against CDK, hire employees away from CDK, and divert sales from CDK. *Id.* Alternatively, by virtue of their new positions with Tekion, which are virtually identical to those they held while they were employed by CDK, it is inevitable that the Individual Defendants will use and/or disclose CDK's trade secrets to assist Tekion in unfairly competing against CDK and to divert sales from CDK. *Id.* at PageID #: 109, ¶ 101.

Tekion's systematic hiring of several employees of CDK coupled with Tekion's knowledge of those employees' non-competition and confidentiality obligations raises a substantial likelihood that Defendants have set about to misappropriate CDK's trade secrets in order to facilitate Tekion's expansion, and ultimately, its ability to compete unfairly with CDK.

## III.    STANDARD OF REVIEW

CDK only needs to make a "short and plain statement of the claim," Fed. R. Civ. P. 8, which need not "be so detailed as to permit an exhaustive legal analysis of the underlying claims" or "spell out exactly how the factual allegations indicate the defendant's liability." *Phoenix Technologies Intern., LLC v. Krones AG*, No. 3:09-cv-1201, 2010 WL 818869, at *1-2 (N.D. Ohio

Mar. 9, 2010). Instead, the factual allegations need only to "give notice . . . as to what claims are alleged" and "render the legal claim plausible." *Varnadore v. National Mut. Ins. Co.*, No. 2:13-cv-827, 2014 WL 2095373, at *3 (S.D. Ohio, May 20, 2014). Plausibility is not a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It only requires factual allegations "that raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Claims "cannot [be] dismiss[ed] for factual implausibility even if it [would] strike[] a savvy judge that . . . recovery is very remote and unlikely." *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 630 (6th Cir. 2009) (citing *Twombly*, 550 U.S. at 556) (internal quotations omitted).

In analyzing Defendants' Motion to Dismiss, the Court "should view each allegation in the context of the entire complaint to determine whether the plaintiff has alleged sufficient facts" in support of each claim. *Bueno v. Scott*, 2014 WL 1513000, at *3 (S.D. Ohio April 16, 2014). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012).

Since the Complaint meets these minimal standards, CDK's claims survive scrutiny under Fed. R. Civ. P. 12(b)(6), and Defendants' Motion to Dismiss must be dismissed in its entirety.

## IV. ARGUMENTS IN OPPOSITION

### A. CDK Plausibly Stated Its Misappropriation of Trade Secrets Claims

The elements of a claim under the Ohio Uniform Trade Secrets Act ("OUTSA") are: "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied*

*Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008).[1]  Defendants contend that CDK failed to plead (1) the existence of a trade secret and (2) that a trade secret was misappropriated, and they further contend that the ITSA does not apply to CDK's claims.  *See* Defs. Mot., Doc #: 13, PageID #: 240-46.  As set forth below, Defendants' arguments fail with regard to CDK's misappropriation claims.

### 1.    Trade secrets exist.

The OUTSA defines a trade secret as:

Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.R.C. § 1333.61(D).  Put simply, "a trade secret is information that has economic value from being secret, and its holder must attempt to keep it secret."  *Gerling & Associates, Inc. v. Odulair, LLC,* 2017 U.S. Dist. LEXIS 100084 (S.D. Ohio June 28, 2017).

Ohio courts apply a six factor test to determine whether information is a trade secret:

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

---

[1] As Defendants note, the analysis of CDK's misappropriation of trade secrets claims under the OUTSA, the Defend Trade Secrets Act ("DTSA"), and the Illinois Trade Secrets Act ("ITSA") is essentially the same.  *See generally* Defs. Mot., Doc #: 13, PageID #: 242-43.  As such, while this section addresses only the OUTSA claim, it is intended to cover the other claims as well.

*Kendall Holdings, Ltd. v. PHPK Technologies,* 521 Fed. Appx. 453, 459 (6th Cir. 2013), *quoting State ex rel. The Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 672 (1997). No single factor is dispositive, *Allied Erecting and Dismantling, Co. v. Genesis Equipment & Manufacturing, Inc.*, 649 F.Supp.2d 702, 712 (N.D. Ohio 2009), and the inquiry is "highly fact-specific," *Wellington Res. Grp. LLC v. Beck Energy Corp.*, No. 2:12-cv-104, 2013 WL 5325911, at *5 (S.D. Ohio Sept. 20, 2013). Moreover, some of the factors require evidence which may not even be available at the pleading stage. Thus, an exhaustive analysis is premature at the pleading stage and is better suited for summary judgment, *id.*, or the trier of fact, *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 862 (Ohio 1999).

### a. CDK sufficiently identified its trade secrets.

Defendants argue that CDK failed to sufficiently describe its trade secrets. A general description of trade secret information is sufficient at the pleading stage. *See e.g. Wellington Resource Group, LLC*, 2013 WL 5325911, *5 (finding it improper to require plaintiff to plead trade secrets with greater specificity where they were described as confidential information related to business opportunities); *Glasstech, Inc. v. TGL Tempering Systems, Inc.*, 50 F.Supp.2d 722, 729 (N.D. Ohio 1999) (declining to require plaintiff to specifically identify at the motion-to-dismiss stage what trade secrets the defendants allegedly misappropriated). Also, "information that has been publicly disclosed . . . is no longer eligible for trade-secret protection." *Allied Erecting & Dismantling Co.*, 649 F.Supp.2d at 712. Thus, requiring specificity at the pleading stage could render the OUTSA's protections meaningless.

Here, for purposes of Defendants' Motion to Dismiss, CDK adequately described its trade secrets as:

> [I]t's pricing, costs, designs, services, sales plans, business model, strategic growth plans, training methods, employee ratings, individual market data, and vendor and customer information[.]

Compl., Doc #: 3, PageID #: 98. Such information is expressly identified by the OUTSA as trade secret information. *See* O.R.C. § 1333.61(D) ("business information or plans, financial information, or listing of names, addresses, or telephone numbers"). Accordingly, at this stage, CDK has plausibly identified trade secrets. *See e.g. Gerling & Associates, Inc. v. Odulair, LLC,* 2017 U.S. Dist. LEXIS 100084 (S.D. Ohio June 28, 2017) (general description of designs, construction methods and materials, and plans sufficient at pleading stage); *Productivity-Quality Sys., Inc. v. Cybermetrics Corp.*, No. 3:17-cv-00369, 2018 U.S. Dist. LEXIS 72798 (S.D. Ohio Apr. 30, 2018) (general categories describing trade secrets sufficient at pleading stage); *Exal Corporation v. Roeslein & Associates, Inc.,* No. 4:12-cv-1830, 2013 WL 6843022, at *3 (N.D. Ohio Dec. 27, 2013) (declining to dismiss claim where trade secrets identified as financial projections and cost structure information, information concerning method of use, and operational information); *Champion Food Service, LLC v. Vista Food Exchange*, No. 1:13-cv-01195, 2013 WL 4046449, at *2 (N.D. Ohio, Aug. 7, 2013) (list of the information was adequate). Accordingly, CDK sufficiently described its trade secret information at the pleading stage.

Moreover, Defendants' reliance on *Alice's Home v. Childcraft Educ. Corp.* No. 09-299, 2010 WL 3448319 (Ohio Ct. App. Sept. 2, 2010) and *Nilssen v. Motorola, Inc.,* 963 F. Supp. 664, 672 (N.D. Ill. 1997) is misplaced and misleading. Neither of these cases address the required specificity of a plaintiff's trade secrets claim at the pleading stage. Rather, the court in *Nilssen* denied cross-motions for summary judgement (allowing the trade secrets claims to move forward) and the plaintiff in *Alice's Home* failed to articulate its claimed trade secrets at trial. Notably, and

tellingly, Defendants fail to cite a single case in which a plaintiff's trade secret claim was dismissed for lack of specificity based on the face of the complaint alone.

That is unsurprising because federal courts have repeatedly found that setting forth "general categories" of trade secret information in the complaint is sufficient to survive a motion to dismiss. *See Best Process Sols., Inc. v. Blue Phoenix Ina*, 569 F. Supp. 3d 702, 714 (N.D. Ohio 2021) (collecting cases). "As one court noted:

> [V]arious federal courts have agreed that plaintiffs' pleadings need not disclose in detail trade secrets that have been misappropriated. This makes sense: Trade secrets are valuable because they are secret – the secret information gives the user a competitive edge in a market for the very reason that the information is unknown to competitors. Requiring a plaintiff to disclose with specificity what trade secrets were misappropriated would expose the secrets and undermine their value."

*Id.* at 714-15 (citing *Church Mut. Ins. Co. v. Smith,* 2015 U.S. Dist. LEXIS 70972 at *4 (W.D. Ky. 2015)). In the instant matter, CDK has pled the existence of its trade secrets in each of its misappropriation claims with sufficient particularity to defeat Defendants' Motion to Dismiss. *See* Compl., Doc #: 3, ¶¶ 93 (Count I), 108 (Count II), and 123 (Count III), PageID #: 107, 110, 112.

**b. CDK's trade secrets derive value from their secrecy.**

It is sufficient that CDK alleged that (1) the secrecy of its trade secrets gives it a competitive advantage over its competitors (such as Tekion) and (2) if possessed, the trade secrets would be used by Tekion to unfairly compete with CDK to CDK's detriment. *See e.g. State v. Corp. for Findlay Mkt.*, 2013-Ohio-1532, ¶ 19 (2013) (finding value where plaintiff's rental information would be valuable to competitors and if acquired by them would put plaintiff at a disadvantage); *Rogers Industrial Products Inc. v. HF Rubber Machinery Inc.*, 9th Dist. No. 25093, 2010 WL 2837780 (Ohio Ct. App. July 21, 2010) (finding an issue of fact regarding value where information could save competitor time and expense); *Hoffmann-La Roche Inc. v. Yoder*, 950 F. Supp. 1348 (S.D. Ohio 1997) (finding documents related to clinical investigations and trials had economic

value to competitor conducting similar trials); *Atlantech, Inc. v. Am. Panel Corp.*, No. 11-50076, 2011 WL 2078222 (E.D. Mich. May 24, 2011) (finding value where information was not generally known and could be used to compete with holder).

Here, CDK is the global leader in the automotive software business and Tekion is one of its direct competitors that is seeking to expand its own automotive software business. Compl., Doc #: 3, PageID #: 98, ¶ 22. Given CDK's expertise in the automotive software industry, if Tekion acquired CDK's trade secrets, it would have a blueprint for its own expansion efforts without needing to expend significant time and its own resources, and thus, be able to compete unfairly with CDK. Additionally, in light of Tekion's expansion efforts, it is plausible that Tekion's hiring of the Individual Defendants over a short seven month period, Defs. Mot., Doc #: 13, Page ID #: 4-5, was an intentional attempt by Tekion to exploit, or inevitably exploit, CDK's trade secrets for its benefit and unfairly compete with CDK. *See e.g.* Complaint, ECF Doc #: 3 PageID #: 108, ¶ 96; *id.*, PageID #: 109, ¶ 101. Based on the above, CDK sufficiently alleged that its trade secrets have independent economic value from not being generally known to its competitors.

### c. CDK maintains the secrecy of its trade secrets.

At this stage, CDK need only to allege facts that plausibly show an effort to keep its trade secrets a secret. *See e.g. Champion Food Service, LLC*, 2013 WL 4046449, at *2 (finding pleading sufficient where it alleged the company had "policies" to keep information confidential).

Here, CDK's Complaint set forth the specific efforts it takes to maintain the secrecy of its confidential and trade secret information. CDK limits which employees may access its trade secrets, Compl,, Doc #: 3, PageID #: 108, ¶ 97; protects its trade secrets from unauthorized access through passwords, *id.*; and requires its employees to sign restrictive covenant agreements

containing non-competition, non-solicitation, non-disclosure, and confidentiality provisions, which prohibit the disclosure of CDK's trade secrets, *id.*. Such "active steps" to maintain the secrecy of CDK's trade secrets constitute reasonable efforts which provide CDK with "presumptive trade secret status." *See List Indus., Inc. v. Umina,* No. 3:18-cv-199 (S.D. Ohio Jul. 12, 2021), citing *Fred Siegel Co., L.P.A. v. Arter & Hadden,* 707 N.E.2d 853, 862 (Ohio 1999). Under these facts, CDK has adequately pleaded its reasonable efforts to maintain the secrecy of its trade secrets, and Defendants' Motion to Dismiss should be denied.

### 2. Defendants misappropriated CDK's trade secrets.

The OUTSA defines misappropriation to include:

> [d]isclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following: . . . At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret . . . was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use . . . .

O.R.C. § 1333.61(B)(2) (emphasis added) (formatting altered). Defendants argue that CDK failed to plead misappropriation "with the requisite particularity." Defs. Mot., Doc #: 13, PageID #: 244-45. As set forth below, CDK has sufficiently pled Defendants' misappropriation of its trade secrets.

### a. Trade secrets were acquired under a confidential relationship.

A confidential relationship can be inferred from circumstances surrounding the relationship between the owner of the trade secret and the defendant. *See e.g., Dayton Superior Corp. v. Yan,* No. 3:12-cv-380, 2013 U.S. Dist. LEXIS 55922 (S.D. Ohio Apr. 18, 2013) (citing *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co. Gen. Commodities Div*., 10th Dist. Nos. 95APE08-1029, 95APE09-1202, 673 N.E.2d 182, 185 (Ohio Ct. App. 1996). Circumstances giving rise to a duty to maintain secrecy may include "the holder of the trade secret reveal[ing] the trade secret to another 'in confidence, and under an implied obligation not to use or disclose it.'"

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) (analyzing Ohio trade-secrets law) (quoting *Cincinnati Bell Foundry Co. v. Dodds*, 10 Ohio Dec. Reprint 154, 156, 19 Weekly Law Bull. 84 (Super. Ct. 1887)); *see also Power Mktg. Direct, Inc. v. Ball*, No. 2:03-CV-1004, 2004 WL 5826149, at *7 (S.D. Ohio Apr. 6, 2004) (applying *Kewanee Oil* analysis to confidential-relationship prong). Where there is an agreement that bars disclosure of any trade secrets, then they were acquired through a confidential relationship. *MEMC Electronic Materials v. Balakrishnan*, 2012 WL 3962905, *7 (S.D. Ohio Sept. 11, 2012). However, "the statute does not require a specific contractual promise on the part of the defendant not to use or divulge this confidential information." *Ball*, 2004 WL 5826149, at *7; *see also Kuvedina, LLC v. Cognizant Tech. Sols.*, 946 F. Supp. 2d 749, 756 (S.D. Ohio 2013) (dismissing argument of no duty of confidentiality because there was no express agreement of confidentiality); *Vanguard Transp. Sys., Inc.*, 673 N.E.2d (finding an understanding regarding non-disclosure, even in absence of a confidentiality agreement).

Here, CDK alleged sufficient facts that the Individual Defendants acquired its trade secrets under a confidential relationship. In that regard, CDK alleged that the Individual Defendants gained access to its trade secrets as part of their employment relationship so that they could do their jobs at CDK. Compl. at PageID: # 99, ¶ 25; PageID: # 100, ¶ 39; PageID: # 102, ¶ 53; PageID: # 104, ¶ 66; PageID: # 106, ¶ 81. Further, CDK also alleged that, as a condition of their employment with Plaintiff, the Individual Defendants each executed their respective Agreements, which made clear the Individual Defendants' obligations not to use or disclose CDK's confidential and trade secret information. *Id.*, Doc #: 3, PageID: # 99, ¶ 28; PageID: # 101, ¶ 42; PageID: # 103, ¶ 56; PageID: # 104, ¶ 69; PageID: # 106, ¶ 84. Moreover, as discussed more fully above, CDK alleged that it took reasonable steps to keep its trade secrets a secret. Finally, CDK alleged

that Tekion acquired, or inevitably will acquire, the trade secrets by employing the Individual Defendants in roles similar to ones they held with CDK.  *Id.* at PageID: # 108-09, ¶¶ 101-102. Without a doubt, at the pleading stage where all reasonable inferences are made in favor of CDK, these facts are sufficient to support the existence of a confidential relationship between CDK and the Individual Defendants.

> **b.**  **Defendants made unauthorized use of the trade secrets.**

Next, Defendants argue that CDK failed to allege with particularity how Defendants used or disclosed CDK's trade secrets.  Defs. Mot., Doc #: 13, PageID #: 245.  O.R.C. § 1333.62(A) states that both "[a]ctual or threatened misappropriation may be enjoined."  The unauthorized use, or misappropriation, of trade secrets may be shown by (1) the acquisition of a trade secret by one with knowledge that acquisition was improper or (2) the disclosure or use of a trade secret.  O.R.C. § 1333.61(B).  Additionally, Ohio recognizes the "inevitable disclosure doctrine," which provides that a "threat of harm . . . can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment."  *Proctor & Gamble Co. v. Stoneham,* 724 N.E.2d 268 (Ohio Ct. App. 2000).  Courts applying this doctrine "have recognized that when employees have knowledge of their employer's confidential business information and trade secrets, it is virtually impossible for those employees to leave the company and work for a competitor, but compartmentalize their knowledge and avoid using their former employer's confidential business information and trade secrets at their new job."  *Polymet Corp. v. Newman*, No. 1:16-cv-734, 2016 U.S. Dist. LEXIS 113000, at *12 (S.D. Ohio Aug. 24, 2016) (collecting cases).  The doctrine can apply even in the absence of a restrictive covenant.  *See e.g. Id.*; *Dexxon Digital Storage, Inc. v.*

*Haenszel*, 5th Dist. No. 04CAE11074, 2005-Ohio3187, ¶ 52 (Ohio Ct. App. June 20, 2005) (applying inevitable disclosure doctrine in absence of non-compete agreement).

Here, CDK alleged both actual and threatened misappropriation.  With regard to actual misappropriation, CDK alleged that the Individual Defendants used CDK's trade secrets to (1) assist Tekion build up its software business, (2) compete against CDK, (3) hire employees away from CDK, and (4) divert sales from CDK. Compl., Doc #: 3, PageID: # 108, ¶ 100. To some extent, the particularity of these facts are within the control of Defendants and will more fully come out during discovery, and Tekion's expansion efforts and the targeted hiring of CDK employees renders the inference of culpability plausible.  Concerning threatened misappropriation, CDK can rely on the inevitable disclosure doctrine.  In that regard, CDK alleged that it employed the Individual Defendants in positions of confidentiality, and as such, provided them with access to trade secrets to perform their job duties, *id.* at PageID: # 108, ¶ 98; that the Individual Defendants are now employed by Tekion, a competitor, in positions similar to ones they previously held with CDK,  *id.* at PageID #: 108-09, ¶¶ 100-101; that Tekion is expanding its automotive software business, *id.* at PageID #: 99, ¶ 22; that CDK's trade secrets would support Tekion's expansion efforts and efforts to unfairly compete with CDK, *id.* at PageID #: 108, ¶ 96; and, under such circumstances, the Individual Defendants will inevitably disclose or use CDK's trade secrets for Tekion's benefit, *id*. at PageID #: 108-09, ¶¶ 100-101. The foregoing facts render it plausible that Defendants made actual or threatened unauthorized use of CDK's trade secrets, and therefore, they are sufficient to show unauthorized use at the pleading stage.

As the foregoing factual allegations state viable misappropriation claims, Defendants' Motion to Dismiss should be denied as to such claims.

### 3.    The ITSA Applies to the Conduct Alleged

Though Defendants argue that the ITSA can never apply extraterritorially, Illinois courts have held that the ITSA can apply beyond the borders of Illinois.  *See Miller UK Ltd. V. Caterpillar Inc.,* 2017 U.S. Dist. LEXIS 49929, *24 (N.D. Ill. Mar. 31, 2017) ("It is thus apparent that ITSA not only lacks a geographic limitation, it authorizes broad geographic application for purposes of trade secret protection that would be invalid in other contexts.  [Defendant's] duty to avoid misappropriation of [plaintiff's] trade secrets cannot be considered unenforceable merely because some of its employees and [plaintiff] were located beyond the borders of Illinois."); *see also IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.,* 304 F. Supp. 3d 746, 758-59 (N.D. Ill. Jan. 20, 2018) ("unlike other Illinois statutes that courts have found to be geographically limited, the ITSA may be applied extraterritorially.").

The extraterritorial application of the ITSA is further supported by the fact that the source of CDK's trade secrets is CDK's headquarters, which is located in Illinois.  *Id.* at 759.  Moreover, the Backs, Auel, Dansby, and Abbott Agreements contain Illinois choice of law provisions – "a factor that, while not dispositive, weighs in favor of application to the independent statutory claims of nonresident plaintiffs."  *Miller UK Ltd.,* 2017 U.S. Dist. LEXIS 49929 at *24 (citing *Morrison v. YTB Int'l, Inc.,* 649 F.3d 533, 537 (7th Cir. 2011)).

As the ITSA has extraterritorial application, Defendants' argument that Count II of CDK's Complaint should be dismissed is wholly without merit.

B. **CDK' Breach of Contract Claims Against Dansby and Abbot Should Not Be Dismissed**

1. **CDK Has Adequately Pled its Breach of Contract Claims Against Dansby and Abbott**

Defendants next argue that CDK failed to allege the existence of a contract between CDK and Dansby or Abbott. Defs. Mot., Doc #: 13, PageID #: 246. However, on the very same page of their brief, Defendants contradict their argument and admit that "CDK's Complaint alleges that Dansby and Abbott each signed "Non-Disclosure Agreements[,]" *id.*, PageID #: 246-47, and further admit that "CDK alleges that [the Agreements] are 'substantially the same' as those allegedly executed by Backs and Auel[,]" *id.,* PageID #: 246, fn. 4. Indeed, CDK's Complaint alleges that both Dansby and Abbott, "as part of and in consideration of [their] employment with CDK, agreed to a variety of obligations contained in a Non-Disclosure Agreement," Compl., Doc#: 3, PageID #: 104, ¶ 67; PageID #: 106, ¶ 82, and that said Agreements were executed by Dansby and Abbott in May 2011 and November 2015, respectively. *Id.* at PageID #: 104, ¶ 68; PageID #: 106, ¶ 83.

Defendants also argue a deficiency premised upon CDK's pleading of some related facts "upon information and belief." Defs. Mot., Doc #: 13, PageID #: 247-248. However, this is merely an attempt by Defendants to place a higher standard on CDK's breach of contract allegations than the standard set forth in Fed. R. Civ. P. 8, particularly since the Sixth Circuit allows pleading upon information and belief in various circumstances. *See e.g. Starkey v. JPMorgan Chase Bank, NA,* 573 F. App'x 444, 447 (6th Cir. 2014) (*quoting* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)). Moreover, "[t]here is no heightened standard for breach of contract claims and therefore only a short and plan statement of the claim showing that the pleader is entitled to relief

and a demand for judgment for the relief the pleader seeks is required." *Williams Indus. Serv. V. FPM, LLC,* 3:20-cv-1869 (N.D. Ohio Apr. 18, 2022) (internal quotations and citations omitted).

Here, CDK has alleged the existence of contracts between it and Dansby and Abbott, has alleged that it performed its obligations under the contract, has alleged that Dansby and Abbott breached their agreements, and has alleged damages. *See* Compl., Doc #: 3, PageID #: 120-123. "Generally, nothing more is required to state a claim for breach of contract at this stage of the litigation." *Westlake Reed Leskosky, Ltd. V. Hudson Holdings,* No. 1:20-cv-1751, 2020 U.S. Dist. LEXIS 244811, at *3 (N.D. Ohio Dec. 20, 2020) (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006); *Capital Equity Grp. v. Ripken Sports, Inc*., No. 1:16 CV 1953, 2017 WL 4155766, at *3 (N.D. Ohio Sept. 19, 2017), *aff'd* 744 F.App'x 260 (6th Cir. 2018)). Further, dismissal of this claim at this juncture would be premature, especially in that discovery could reveal that Dansby and Abbott are in possession of their respective Agreements, or have access to them (e.g., via a personal email account).

As CDK has adequately pled its breach of contract claims against Dansby and Abbott, the Court should deny Defendants' Motion to Dismiss as it pertains to Counts IX and X of the Complaint.

### 2. Dansby's Restrictive Agreement is Enforceable

Defendants also contend that Dansby's Agreement was entered into between Dansby and ADP and that as such, CDK cannot enforce the Dansby Agreement because "the Court must assume that the purported agreement is silent about assignability." Defs. Mot., Doc #: 13, PageID #: 249. But such assumption would be improper, because in ruling on Defendants' Motion to Dismiss, it is "the court's duty to construe the pleadings in the light most favorable to the non-moving party." *Kavanagh v. Lodge Care Ctr., Inc.,* No. 1:12-cv-864 at *3 (S.D. Ohio May 8,

2013). Here, CDK is the non-moving party, and the Court must "accept all well-pleaded allegations as true." *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 481 (6th Cir. 2009) (quoting *Gentek Building Products, Inc. v. Sherwin-Williams,* 491 F.3d 320, 330 (6th Cir. 2007)).

Here, CDK specifically pled that the Dansby agreement contained substantially the same provisions as the Backs, Auel, and Sparks Agreements. Compl., Doc #: 3, PageID #: 104, fn. 1. The Backs, Auel, and Sparks Agreements each contain an "Assignment and Successorship" provision which expressly provides for assignability. *See* Doc #: 3-2, PageID #: 42, ¶ 135; Doc #: 3-3, PageID #: 159, ¶ 18; Doc #: 3-4, PageID #: 181, ¶ 11. These "Assignment and Successorship" provisions make clear that the Agreement is binding and shall inure to the benefit of any successors or assigns. *Id.* As such, in construing CDK's allegations in the light most favorable to CDK, the Court should accept as true that the Dansby Agreement *does* have an assignability provision and that such provision inured to the benefit of CDK (as ADP's successor) once CDK was spun off from ADP. Accordingly, CDK has a right to enforce the Dansby Agreement, and CDK's claim for breach of contract against Dansby (Count IX) should not be dismissed.

### C.  CDK Sufficiently Pled its Claims for Tortious Interference and Unjust Enrichment

#### 1.  Preemption is premature.

Defendants argue that the Court should dismiss Counts IV and V of the Complaint based on preemption, but expanded factual development should be required before ruling on preemption. *See e.g. Source Assoc., Inc. v. Mitsui Chemicals America, Inc.*, No. 5:15-CV-215, 2016 WL 828785, at *7 (N.D. Ohio March 3, 2016) (denying as premature a motion to dismiss based on preemption where complaint could not be clearly construed to either contain, or *not* contain, an independent factual basis); *Exal Corp. v. Roeslein & Assoc., Inc.*, No. 4:12-cv-1830, 2012 WL

4754748, at *3 (N.D. Ohio Oct. 2, 2012) (requiring fuller factual development prior to ruling on OUTSA preemption). Preemption can be revisited, if appropriate, on summary judgement.

The reasons underlying this approach are persuasive. For one, "acting prematurely can result in a scenario that strips [CDK] of any recovery, even though [CDK] has been wronged." *Id.* As explained by the court in *Exal Corp.*:

> Preempting Plaintiff's conversion claim at the motion to dismiss stage risks leaving the claimant without a remedy for information he proves has been stolen. For example, in this case, if the Court were to dismiss plaintiff's conversion claim and later make the finding that, although plaintiff had proved the defendants took its pricing structure and business proposals, such information was not a trade secret under the PTSA, the Court would be in the difficult position of telling the plaintiff it had no remedy.

*Id.* (quoting *Cenveo Corporation v. Slater*, 2007 WL 527720, *3 (E.D. Pa.)). Additionally, deciding preemption prematurely could "preclude [CDK] from discovering facts to support [its] common law theories." *Exal Corp.*, 2012 WL 4754748, at *3. As reasoned by another Ohio court, which waited for summary judgment to evaluate preemption:

> Dismissal based on preemption was inappropriate when the Defendants filed a Motion to Dismiss because it was unclear whether discovery would enable Thermodyn to base its additional state law claims on facts different from those alleged in its trade secret claim.

*Thermodyn Corp. v. 3M Co.*, 593 F. Supp 2d 972, 990 (N.D. Ohio 2008). The Court should reject Defendants' argument in this regard for similar reasons.

### 2. The claims possess an independent factual basis.

Where factual allegations may touch upon misappropriation-of-trade-secret facts but the claims are intended to address another legal harm, courts have adopted a "partial preemption approach" which "allows a court to parcel out the common law theory designed to remedy a separate wrong from misappropriation of trade secrets." *Source Assoc., Inc.*, 2016 WL 828785, *7 (finding correct the partial exemption approach) (quoting *Office Depot, Inc. v. Impact Office*

*Prods., LLC*, 821 F. Supp. 2d 912, 921 (N.D. Ohio 2011).  Challenged claims survive if there is any factual matter beyond misappropriation.  *Id.*

Here, even if Defendants' preemption challenge is not premature (which it is), CDK's common law claims are not preempted because they have an independent factual basis.  The Complaint makes clear that, aside from misappropriation, Defendants engaged in other wrongful conduct. *See, e.g.,* Compl., Doc #: 3, PageID #: 105, ¶ 76 ("Before leaving CDK, Dansby solicited other CDK employees, including but not limited to Jared Kretschmar, to apply for positions with Tekion.")  CDK anticipates that discovery will reveal additional wrongful conduct which may serve as an independent factual basis for the claim.  For example, absent discovery, it is unclear whether Defendants used improper communications in their solicitations or whether they converted business opportunities or interfered with vendors/suppliers.  Such misconduct would form an independent basis for the common law claims, irrespective of whether Defendants used CDK's trade secrets.  And CDK should have the opportunity to engage in such discovery.

Accordingly, because preemption is premature and CDK's common law claims possess an independent factual basis, the Court should wait to consider preemption and deny Defendants' Motion to Dismiss as it pertains to Counts IV and V of the Complaint.

## V.    CONCLUSION

For the reasons set forth herein, CDK respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety; however, should the Court grant any portion of Defendants' Motion, CDK respectfully requests leave to address any factual deficiencies in an Amended Complaint so that this case can be decided on its merits and not on a technicality.

Respectfully Submitted,

**OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.**

*/s/ Samuel N. Lillard*

Samuel N. Lillard (0040571)
Jantzen D. Mace (0099005)
88 E Broad Street, Suite 2025
Columbus, OH 43215
Phone: 614.494.0420
Fax:    614.633.1455
samuel.lillard@ogletree.com
jantzen.mace@ogletree.com

*Trial Attorneys for Plaintiff CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on August 24, 2023, a copy of the foregoing *Memorandum in Opposition to Defendants' Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's system, including the following:

Michael A. Roberts
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
T: 513.629.2799
F: 513.333.4330
mroberts@brickergraydon.com

*Trial Attorney for All Defendants*

Patrick F. Hickey (admitted *pro hac vice*)
Ben Shipper (admitted *pro hac vice*)
Hickey, Hauck, Bishoff, Jeffers & Seabolt PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
T: 313.964.8600
F: 313.964.8601
phickey@hhbjs.com
bshipper@hhbjs.com

*Attorneys for All Defendants*

*/s/ Samuel N. Lillard*
Samuel N. Lillard (0040571)

*Trial Attorney for Plaintiff*

57947917.v3-OGLETREE