IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| **CDK GLOBAL, LLC** | : | |
| | : | |
| Plaintiff, | : | CASE NO.: 1:23-cv-00357 |
| | : | |
| -v- | : | JUDGE: Jeffrey P. Hopkins |
| | : | |
| **TEKION CORP,** *et. al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff CDK Global, LLC ("CDK" or "Plaintiff"), moved this Court, pursuant to Fed. R. Civ. P. 65(a), to issue a preliminary injunction enjoining and prohibiting Defendants Andrew Backs ("Backs"), Demi Auel ("Auel"), Tyler Sparks ("Sparks"), Richard Dansby ("Dansby"), and Christopher Abbott ("Abbott") (Collectively, the "Individual Defendants") from continuing to violate their valid and binding restrictive covenants ("the Agreements") with CDK. The Individual Defendants and Defendant Tekion Corp. ("Tekion") (with the Individual Defendants, "Defendants") oppose CDK's motion primarily on the basis that it is not supported by affidavits, declarations, or other evidence. However, Fed. R. Civ. P. 65(a) contemplates a hearing on CDK's motion for a preliminary injunction, at which time, of course, the Court will receive evidence on the motion. As such, Defendants fail to offer sufficient factual or legal support for their opposition to the motion, and at this time, it would be appropriate for the Court to hold a conference with the parties discussing expedited discovery schedules (including written discovery and depositions) and the date for a preliminary injunction hearing.

As CDK will prove at the evidentiary hearing on this motion, the four preliminary injunction factors favor the issuance of an injunction, and CDK respectfully requests that the Court grant its Motion for Preliminary Injunction accordingly.

## II. ARGUMENT

### A. CDK Will Submit Evidence at the Evidentiary Hearing on this Motion

Fed. R. Civ. P. 65(a), which governs the issuance of preliminary injunctions, directs that "[n]o preliminary injunction shall be issued without notice to the adverse party." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 552 (6th Cir. 2007) (citing Fed. R. Civ. P. 65(a)(1)). The Sixth Circuit has interpreted this requirement to "impl[y] a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Id.* (citing *County Sec. Agency v. Ohio Dept. of Commerce,* 296 F.3d 447, 484 (6th Cir. 2002); *See also Carpenter's Dist. Council v. Cicci,* 261 F.2d 5, 8 (6th Cir. 1958) (Rule 65 "contemplates that the issuance of a preliminary injunction shall be upon notice to the adverse party **and after a hearing**." (emphasis added)).

The Sixth Circuit has adopted the rule announced by the Eleventh Circuit in *McDonald's Corp. v. Robertson,* which states as follows:

> [W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.

*Certified Restoration,* 511 F.3d at 553 (quoting 147 F.3d 1301, 1312-13 (11th Cir. 1998)). Holding an evidentiary hearing on a motion for preliminary injunction when there is a dispute of material facts has been a long-standing rule in the Sixth Circuit, both before and after the *McDonald's* decision. *See, e.g., Sentinel Trust Co. v. Namer,* 172 F.3d 873 (6th Cir. 1988) (unpublished table

opinion) (interpreting prior precedent to require an evidentiary hearing "when there is a disputed issue of fact and the documentary record is insufficient to resolve it"); *Detroit & Toledo Shore Line R.R. Co. v. Bhd. Of Locomotive Firemen & Enginemen,* 357 F.2d 152, 153-154 (6th Cir. 1966) (finding that, because there was a controversy over the facts, a hearing should have been held before issuing a preliminary injunction); *Cicci,* 261 F.2d at 8 (requiring a hearing "if the allegations of a complaint are denied by a defendant"); *Certified Restoration,* at 553 ("if questions of fact had been in dispute, an evidentiary hearing would have been required.").

Though the Individual Defendants have not yet filed an Answer to CDK's Complaint, early motion practice has established a litany of disputed facts. For example, the parties dispute whether the Individual Defendants were "comparatively insignificant IT helpdesk workers without . . . knowledge of protectable information" [Doc No. 26, PageID #: 322] or whether they "routinely worked with CDK's confidential and proprietary business information." *Compare* Doc. No. 26, PageID #: 322 and Doc No. 14, PageID #: 256. The parties also dispute whether the Individual Defendants each signed restrictive covenant agreements and further dispute the existence of agreements between CDK and Dansby and Abbott. *Compare* Doc. No. 13, PageID #: 238 and Doc No. 14, PageID #: 256-257. Additional disputed facts include (1) the exact scope and responsibilities of the Individual Defendants' job duties at both Tekion and CDK, (2) whether any of the Individual Defendants were told they did not have non-compete obligations, (3) whether the Individual Defendants possess any trade secret information, (4) whether that trade secret information has been disclosed to Tekion, (5) whether Tekion aggressively targeted and recruited the Individual Defendants, (6) whether the Individual Defendants had extensive client contact while at CDK, and (7) whether the Individual Defendants have contacted other CDK employees to recruit them to work for Tekion, among other disputed facts.

Even if there were no disputed facts in this matter (which there are), an evidentiary hearing would still be required because Defendants have challenged the legal basis for CDK's requested injunction. *See County Sec. Agency,* 296 F.3d at 484 (finding a hearing to be required even though defendant "did not contest the factual basis underlying the stipulated preliminary injunction" but only "challeng[ed] the legal basis for the issuance of any future injunction against him"). Here, there are disputed factual issues *and* Defendants have challenged the legal basis for the issuance of a future injunction against them.

As such, an evidentiary hearing must be held before a ruling on CDK's motion for preliminary injunction is issued. CDK will present all evidence in support of its motion at that hearing after expedited discovery has been completed.

**B.     The Relevant Factors Favor the Issuance of a Preliminary Injunction**

"The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.,* 755 F.2d 1123, 1129 (6th Cir. 1985). As outlined in CDK's briefing and as will be proven at the evidentiary hearing on this motion, the four preliminary injunction factors favor the issuance of injunctive relief in this matter.

**1.     CDK Has a Strong Likelihood of Success on the Merits**

"This factor weighs in favor of granting the motion if the plaintiff "shows more than a mere possibility of success" and, instead, "raise[s] questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus more deliberate investigation." *Stooksbury v. Ross,* 528 Fed. Appx. 547, 558 (6th Cir. 2013) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 402 (6th Cir. 1997)).

With regard to this factor, Defendants' response in opposition to CDK's motion initially attacks the sufficiency of CDK's evidence (which, as detailed above, will be submitted at the evidentiary hearing following expedited discovery). However, as set forth in CDK's motion, "a party is not required to prove his case in full at a preliminary injunction hearing" as the evidence "is less complete than a trial on the merits." *Certified Restoration,* 511 F.3d at 542 (citation and internal quotation marks omitted); *see also In re Eagle-Picher Indus., Inc.,* 963 F.2d 855 (6th Cir. 1992) (holding that the district court did not err in granting a preliminary injunction where it relied primarily on the three non-likelihood factors). CDK is not required to prove its entire case through the briefing on this motion, and Defendants assertion to the contrary is misplaced.

Defendants' reliance on *Concentrix CVG Customer Mgmt. Grp. Inc. v. Daoust* is similarly misplaced, as *Daoust* is factually distinguishable from the instant matter. *See* 2021 U.S. Dist. LEXIS 83830 (S.D. Ohio May 3, 2021). Importantly, when determining the validity of a non-compete, "each case must be decided on its own facts." *Id.* at *26. In *Daoust*, the non-competition agreement at issue "would prevent Daoust from obtaining any job with any company, world-wide, that touches BPO services like Concentrix, regardless of whether that company is an actual competitor of Concentrix or Daoust is performing a role that is substantially similar to his current role." *Id.* at 31-32 (emphasis in original). This is a far cry from the language in the Individual Defendants' respective Agreements, which only prevent unfair competition and are reasonably limited in geographic and temporal scope. Notably, Defendants did not once reference the non-compete language that is at issue in *this* lawsuit. Instead, Defendants merely explain the *Daoust* decision and the language at issue in *that* lawsuit, then rely on the conclusory statement that "the Individual Defendants' restrictive agreements are even more unenforceable," without any factual support. (*See* Doc. No. 26, PageID #: 333).

Page **5** of **11**

When applying the reasonableness factors to the facts and the non-compete agreements in *this* lawsuit, it is clear that the agreements are reasonable. Specifically, the non-compete agreements are reasonable because: (a) the agreements impose temporal and special limitations (factor one); (b) the Individual Defendants had direct contact with customers while at CDK (factor two); (c) the Individual Defendants possess CDK's confidential information and trade secrets (factor three); (d) the agreements only bar unfair competition (factor four); (e) the agreements do not stifle the Individual Defendants' inherent skill and experience (factor five); (f) the benefit to CDK is not disproportionate to the Individual Defendants' detriment (factor six); (g) the agreements do not destroy the Individual Defendants' sole means of support[1] (factor seven); (h) the Individual Defendants talent was developed through employment with CDK (factor eight); and (i) the Individual Defendants' employment with Tekion is not merely incidental to the main employment (factor nine). Moreover, CDK has two legitimate business interests which further support the reasonableness of the Individual Defendants' Agreements:

> (1) where the customer relationships are near-permanent and but for the employee's association with the employer the employee would not have had contact with the customers; and (2) where the former employee acquired trade secrets or other confidential information through his employment and subsequently tried to use it for his own benefit.

*See Outsource Intern., Inc. v. Barton,* 192 F.3d 662, 666 (7th Cir. 1999). As explained in CDK's original motion, both of these legitimate interests justify the enforcement of the non-compete Agreements at issue in this case. *See generally* Doc. No. 14, PageID #: 12-14.

---

[1] While the Individual Defendants' respective affidavits all identically claim that if they are enjoined, they "will become unemployed and otherwise unable to earn a living," CDK disputes such claims. (*See, e.g.,* Doc No. 26-1, PageID #: 346). The Individual Defendants' Agreements are not so restrictive that they bar the Individual Defendants from all employment, only from unfair competition. As such, the Individual Defendants are all more than capable of securing employment outside of Tekion.

CDK can prove that the Individual Defendants each breached their respective Agreements, and can further prove that such Agreements are reasonable and enforceable under applicable law. As such, CDK has a strong likelihood of success on the merits regarding its breach of contract claims, and this factor militates in favor of issuing an injunction.

### 2. CDK Will Suffer Irreparable Harm without an Injunction

Ohio courts have held that a substantial threat of imminent harm exists when a defendant employee "possesses knowledge of the employer's trade secrets and begins working in a position that causes [them] to compete directly with the former employer or the product line that the employee formerly supported." *Prosonic Corp. v. Stafford,* 539 F.Supp. 2d 999, 1007 (S.D. Ohio 2008) (quoting *Jacono v. Invacare Corp.,* No. 86605, 2006-Ohio-1596, at *7 (Cuyahoga Ohio App. 8th Dist.)). "[C]ourts have found that injunctive relief is warranted by establishing that an employee gained intimate knowledge of an employer's trade secrets and confidential information, and has begun working for a competitor in a substantially similar capacity." *Id.*

Injunctive relief is especially warranted in this matter given the presence of unfair competition. "[T]he loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer." *Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992). This District has similarly held that "a 'likely interference with customer relationships resulting from the breach of a non-compete agreement,' the 'loss of customer goodwill,' and the 'loss of fair competition' all may qualify as irreparable injuries." *PUI Audio, Inc. v. Van Den Broek,* 2021 U.S. Dist. LEXIS 202846 at *20 (S.D. Ohio Oct. 21, 2021) (citing *Certified Restoration,* 511 F.3d at 550); *see also AK Steel Corp v Miskovich,* 2014 U.S. Dist. LEXIS 197389, at *4 (S.D. Ohio Mar. 3, 2014) ("Ohio courts that have considered non-compete agreements have recognized that even a substantial threat of harm is a sufficient basis upon which

to grant injunctive relief."). Given the Individual Defendants' knowledge and possession of CDK's confidential and trade secret information, which is being used to unfairly compete against CDK by Tekion, CDK will suffer irreparable injury absent an injunction. *See Avery Dennison Corp. v. Kitsonas,* 118 F.Supp. 2d 848, 854-55 (S.D. Ohio 2000) (finding that failure to enforce the restrictive covenant against former employee would present irreparable injury to plaintiff).

Defendants' assertion that CDK's "delay" in filing for injunctive relief means that CDK will not suffer irreparable harm is misleading and should be disregarded. For one, CDK should not be punished for attempting to first resolve this matter outside of litigation. Further, "[a]ll delays in seeking injunctive relief are not unreasonable. *York Risk Servs. Grp v. Couture,* 787 Fed. Appx. 301, 308 (6th Cir. 2019) (finding a six month delay to be reasonable); *see also Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 436 (6th Cir. 2004) (same). Dansby resigned from CDK and began working for Tekion in May 2023. CDK filed the instant motion in August 2023, a mere three months later. CDK's "delay" in filing this motion was reasonable, especially when considering CDK's attempt to resolve this matter with Defendants before initiating litigation. As such, this factor favors the issuance of an injunction.

### 3. The Injunction Would Not Cause Substantial Harm to Others

Defendants try to evade this factor by claiming that an injunction would wholly prevent the Individual Defendants from earning a living. This is simply not the case as the geographic and temporal restrictions to which the Individual Defendants voluntarily agreed are reasonable and do not wholly prevent the Individual Defendants from obtaining employment. Further, Defendants' contention that the Individual Defendants should be relieved of their contractual obligations because of alleged conversations that they had with third party CDK employees is baseless and unsupported by law. These employees were not parties to the agreements between CDK and the

Individual Defendants and any alleged "well-wishes" do not nullify the Individual Defendants' contractual obligations. Any alleged harm that would result from an injunction to enforce those contractual obligations would be self-inflicted by the Individual Defendants' own actions.

This District has held that "the self-inflicted harm to Defendants that could result from enforcement of the non-compete clause should not excuse their actions." *Petland, Inc. v. Hendrix,* 2004 U.S. Dist. LEXIS 32591, at *23 (S.D. Ohio Sept. 14, 2004) (citing *Midwest Guar. Bank v. Guaranty Bank,* 270 F.Supp. 2d 900, 924 (E.D. Mich. 2003) (holding that a party "cannot place itself in harm's way, and then later claim that an injunction should not issue because of costs which it must incur in order to remedy its own misconduct.")). "To conclude otherwise would permit Defendants to breach their agreement and then claim that the harm flowing from that breach renders the breach excusable. That would be an unjust and illogical result." *Id.* at 24.

CDK's motion does not ask for the Individual Defendants to be completely barred from all employment forever. It simply seeks a preliminary injunction in line with the valid and reasonable restrictive covenants to which each of the Individual Defendants voluntarily agreed, pending a trial on the merits. The Individual Defendants should not be permitted to breach their contractual obligations and then argue that undoing such breach would cause them harm. Any such harm that would result from an injunction is the result of the Individual Defendants' own actions and is outweighed by the harm to CDK.

### 4. The Injunction Would Serve the Public Interest

This factor is not "neutral" as Defendants claim. *See* Doc. No. 26, PageID #: 341. "'Preserving the sanctity of contractual relations and preventing unfair competition have traditionally been in the public interest.'" *Total Quality Logistics, LLC v. OTC Logistics LLC,* U.S. Dist LEXIS 46660, at *5 (S.D. Ohio Mar. 21, 2019) (quoting *UZ Eng'red Prods. Co., v.*

*Midwest Motor Supply Co., Inc.,* 147 Ohio App. 3d 382, 2001-Ohio-8779 (Ohio Ct. App. 2001). While Defendants attempt to argue that an injunction would restrict the Individual Defendants' employment opportunities, the enforcement of "voluntarily assumed contract obligations" serves the public interest. *Certified Restoration,* 511 F.3d at 551. Indeed, "'[t]he public interest is **always** served in the enforcement of valid restrictive covenants contained in lawful contracts.'" *Handel's Enters v. Schulenburg,* 765 Fed. Appx. 117, 125 (6th Cir. 2019) (quoting *FirstEnergy Sols. Corp. v. Flerick,* 521 F.App'x 521, 529 (6th Cir. 213)) (emphasis added). Therefore, the public interest would be served by issuance of a preliminary injunction and the fourth factor weighs in favor of granting an injunction.

### III. CONCLUSION

For the foregoing reasons, the Court should grant CDK's Motion for a Preliminary Injunction and enjoin the Individual Defendants from continuing to violate the valid and binding restrictive covenants in their respective Agreements for one year following the date of the grant of the injunction sought by this Motion.

Respectfully submitted,

*/s/ Samuel N. Lillard*
Samuel N. Lillard (0040571)
Jantzen D. Mace (0099005)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
88 E. Broad Street, Suite 2025
Columbus, OH 43215
Phone: 614.494.0420
Fax:    614.633.1455
samuel.lillard@ogletree.com
jantzen.mace@ogletree.com

*Attorneys for CDK Global, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on September 25, 2023, a copy of the foregoing *Reply in Support of Motion for Preliminary Injunction* was electronically filed with the Clerk of Court using the CM/ECF system.  Notice of the filing will be sent to all parties by operations of the Court's electronic filing system.  Parties may access this filing through the Court's system, including the following:

Michael A. Roberts
Bricker Graydon LLP
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
T: 513.629.2799
F: 513.333.4330
mroberts@brickergraydon.com

*Trial Attorney for All Defendants*

Patrick F. Hickey (admitted *pro hac vice*)
Ben Shipper (admitted *pro hac vice*)
Hickey, Hauck, Bishoff, Jeffers & Seabolt PLLC
One Woodward Avenue, Suite 2000
Detroit, MI 48226
T: 313.964.8600
F: 313.964.8601
phickey@hhbjs.com
bshipper@hhbjs.com

*Attorneys for All Defendants*

/s/ Samuel N. Lillard
Samuel N. Lillard (0040571)

*Trial Attorney for Plaintiff*